In the Supreme Court of Georgia

Decided: March 27, 2015

S14A1797. FAVORS v. THE STATE.

HUNSTEIN, Justice.

Appellant Michael Favors was convicted of murder, burglary, aggravated assault on a peace officer, and other related offenses in connection with the December 2003 shooting death of Theodore Barber. Favors now appeals, contending the trial court erred in admitting certain witness testimony and in sentencing him on certain counts, and claiming that his trial counsel rendered constitutionally ineffective assistance. Though we find no error in the verdicts and no ineffective assistance on the part of trial counsel, we do find error with respect to the trial court's merger of some offenses, and we therefore must vacate and remand to the trial court for proper merger and resentencing.[1]

---

[1]Favors and co-indictee Thomas Jerome McCoy were indicted by a Fulton County grand jury in February 2004. Both were indicted on one count of malice murder, two counts of felony murder, one count of aggravated assault, one count of burglary, one count of theft by receiving, and two counts of firearm possession during the commission of a felony; Favors was also indicted on one count of aggravated assault on a peace officer. Favors and McCoy were jointly tried and convicted in October 2005, but in October 2009 the trial court, citing evidentiary error, granted

On December 2, 2003, police officer Heather Davis responded to a 911 call reporting a burglary in progress at a Fulton County apartment complex. Officer Davis arrived in her marked patrol vehicle with emergency lights activated and, after parking and exiting the car, she heard the squeal of tires and saw a burgundy Ford Expedition back out of a parking space, then drive towards her. Driving the SUV was a young male with an afro and gold teeth, who was ultimately identified as Appellant Michael Favors. Officer Davis, in full uniform with her service weapon drawn, yelled at Favors to stop, but he did not, and she was forced to jump out of the way of his oncoming vehicle. Officer Davis and Officer Vernal Sutherland, who had also responded to the burglary call, pursued the vehicle as it sped away and wrecked a short time later. Favors

their motions for new trial. The pair were re-tried in April 2012 and convicted on all counts. Favors was sentenced to life imprisonment for malice murder, a five-year concurrent term for theft by receiving, a consecutive five-year term for one of the two firearm possession counts, a concurrent five-year term for the second firearm possession count, and a concurrent five-year term for aggravated assault on a peace officer. The trial court purported to "merge" the remaining counts for sentencing purposes. Favors filed a timely motion for new trial on May 25, 2012 and amended the motion on May 31, 2013. On September 18, 2013, the trial court granted the motion on the theft by receiving count, finding a lack of evidence to support the conviction, but denied the motion as to all other counts. Favors filed his notice of appeal on October 13, 2013. His appeal was docketed to the September 2014 term of this Court and thereafter was submitted for decision on the briefs.

fled on foot into a wooded area, where Officer Sutherland found him hiding and placed him under arrest.

Officer Davis returned to the apartment from which the 911 call had originated to find the door kicked in and a male victim lying on the floor bleeding from a fatal gunshot to the neck. Near the victim's body lay an unused 16-gauge shotgun. Also found at the scene were a .40 caliber shell casing and an unfired .40 caliber bullet. There was a shoe print on the broken door; the print resembled the tread pattern on shoes belonging to Favors.

The burgundy Expedition was determined to have been stolen at gunpoint from its owner a few days prior to the murder. A search of the vehicle uncovered fingerprints matched to Favors as well as a candy wrapper, which bore a fingerprint that was ultimately matched to McCoy.

Witness Taja Glenn, McCoy's girlfriend at the time of the crimes, testified at trial that on the day of the crimes, she and her friend Lakeesha Reese rode with Favors and McCoy in a burgundy Expedition, which McCoy told Glenn they had stolen. The foursome went to a nearby hotel, where they watched television and played video games and prepared to spend the night. Both men had guns with them. Glenn overheard Favors and McCoy talking about a plan

3

to "hit a lick" – street slang for robbing someone – and the fact that the person they intended to rob was not supposed to be at home. At some point, Favors and McCoy left the hotel room, telling Glenn and Reese that if they were not back by a certain time, Glenn and Reese should pack up their belongings and leave the hotel. By the following morning, the men had not returned. In a later telephone conversation, McCoy told Glenn that "the lick went bad," and that the victim had been at home with a gun and was shot.

The medical examiner testified that the victim had died from a gunshot wound to the chest.

1. Though Favors has not enumerated the general grounds, we have concluded that the evidence as summarized above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Favors was guilty of all the crimes of which he was convicted. Jackson v. Virginia, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Favors contends the trial court erred in permitting Glenn to testify about (a) overhearing Favors and McCoy discussing their plan to "hit a lick" and (b) McCoy's subsequent statement to her that "the lick went bad" and the victim was shot. Favors contends that both his conversation with McCoy and

4

McCoy's later statement were inadmissible hearsay and that, in combination, they violated Favors' rights under the Confrontation Clause, see Bruton v. United States, 391 U.S. 123 (88 SCt 1620, 20 LE2d 476) (1968), because they were statements by a non-testifying co-defendant implicating Favors in the "lick."

As an initial matter, the statements in question were both properly admitted under the co-conspirator exception to the hearsay rule. See former OCGA § 24-3-5[2] (once a conspiracy is shown, statements by one co-conspirator during the pendency of the criminal project are admissible against all). The evidence independent of these statements was sufficient to make "a prima facie showing . . . of the existence of a corrupt agreement" between Favors and McCoy. Brown v. State, 262 Ga. 223, 225 (2) (c) (416 SE2d 508) (1992). Specifically, on the night of the crimes, the pair, both armed with guns, left the hotel room together – having forewarned their female companions they might not return – in the vehicle in which Favors subsequently attempted to flee the crime scene. Given this prima facie evidence of a conspiracy between the co-

---

[2]The co-conspirator hearsay exception is now codified at OCGA § 24-8-801 (d) (2) (E), effective for proceedings on and after January 1, 2013.

5

defendants, any statements made by McCoy "during the pendency of the criminal project," former OCGA § 24-3-5, were admissible against Favors. The conversation between Favors and McCoy took place during the planning phase of the crimes, clearly during the pendency of the conspiracy. McCoy's subsequent statement to Glenn was made in the post-crime concealment phase of the conspiracy. See Brooks v. State, 281 Ga. 14 (2) (635 SE2d 723) (2006). Contrary to Favors' contention, the fact that Favors had been arrested by the time McCoy made the second statement to Glenn does not render the conspiracy at an end, because the effort to conceal McCoy's identity as a participant in the crimes was still ongoing. See id. at 727 (post-arrest statements made by co-conspirators to third parties were properly admitted under the co-conspirator hearsay exception); accord Perera v. State, 295 Ga. 880 (5) (763 SE2d 687) (2014).

As to the Confrontation Clause issue, "[a] defendant's Sixth Amendment right to be confronted by the witnesses against him is violated under Bruton 'when co-defendants are tried jointly and the testimonial statement of a co-defendant who does not testify at trial is used to implicate the other co-defendant in the crime.'" Ardis v. State, 290 Ga. 58, 60 (2) (a) (718 SE2d 526) (2011).

6

Bruton thus applies only to out-of-court statements by non-testifying co-defendants that are "testimonial" in nature. Billings v. State, 293 Ga. 99 (4) (745 SE2d 583) (2013). A statement is testimonial if its "primary purpose . . . was to establish evidence that could be used in a future prosecution." Pitts v. State, 280 Ga. 288, 289 (627 SEd 17) (2006). Here, neither of the statements in question were testimonial in nature; the first was a conversation in furtherance of the criminal conspiracy, the second a statement made by a co-conspirator to his girlfriend, and neither was made under circumstances indicating the declarant's intent to provide evidence for a future prosecution. Indeed, "statements by a coconspirator made during and in furtherance of the conspiracy are not considered 'testimonial' and therefore do not require any constitutional scrutiny under the Confrontation Clause." Paul S. Milich, Ga. Rules of Evidence, § 18.11, p.717 (2014-2015 ed.). Accordingly, the trial court did not err in admitting these statements.

3. Favors next contends that the trial court erred in admitting Officer Davis' testimony, in recounting her brush with the SUV in the apartment parking lot, that she made eye contact with the vehicle's driver and that "I know he saw me." Favors claims this statement was improper speculation that went

to the heart of the offense of aggravated assault on a peace officer, which requires knowledge of the victim's identity as a police officer. See OCGA § 16-5-21 (d); Bundren v. State, 247 Ga. 180 (2) (274 SE2d 455) (1981). We disagree. "A witness who personally observed the event to which she is testifying may state her impressions drawn from, and opinions based upon, the facts and circumstances observed by her." Smith v. State, 290 Ga. 428, 430 (3) (721 SE2d 892) (2012). See also Dunn v. State, 291 Ga. 551 (3) (732 SE2d 524) (2012) (lay witness is permitted to offer her opinion as to a defendant's behavior so long as it is based on personal observation and the witness states the facts on which the opinion is based). Here, Officer Davis' opinion that Favors saw her was based on her personal observation of the driver of the SUV, with whom, she testified, she made eye contact. Her testimony in this regard thus was properly admitted, and this enumeration lacks merit.

4. Favors also contends his trial counsel rendered ineffective assistance. To establish ineffective assistance of counsel, a defendant must show that his trial counsel's performance was professionally deficient and that but for such deficient performance there is a reasonable probability that the result of the trial would have been different. Strickland v. Washington, 466 U. S. 668, 695 (104

SCt 2052, 80 LE2d 674) (1984); Wesley v. State, 286 Ga. 355 (3) (689 SE2d 280) (2010). To prove deficient performance, one must show that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." Romer v. State, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013). Courts reviewing ineffectiveness claims must apply a strong presumption that counsel's conduct fell within the wide range of reasonable professional performance. Id. Thus, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course. Id. If the defendant fails to satisfy either the "deficient performance" or the "prejudice" prong of the Strickland test, this Court is not required to examine the other. See Green v. State, 291 Ga. 579 (2) (731 SE2d 359) (2012).

(a) Favors first claims that counsel performed deficiently in effectively conceding, during closing argument, Favors' guilt on the theft by receiving and aggravated assault on a peace officer counts. At the new trial hearing, trial counsel testified that, after discussing possible defenses with Favors, he decided as a matter of trial strategy to concede guilt on these two counts. As to the theft

9

by receiving count, there was clearly no prejudice in this strategy, given that Favors' conviction on this count was ultimately vacated. As to the aggravated assault on a peace officer, Favors cannot establish deficient performance, given Officer Davis' unequivocal and undisputed testimony recounting how Favors drove the SUV at her after she exited her patrol car in the apartment complex parking lot. In the face of such evidence, it was not objectively unreasonable to concede guilt on this offense in an effort to avoid a conviction on the more serious murder charges. See, e.g., Taylor v. State, 304 Ga. App. 395 (2) (b) (696 SE2d 686) (2010) (in light of quantum of evidence presented on lesser charge as opposed to more serious one, it was reasonable trial strategy to concede guilt on lesser charge).

(b) Favors also contends his trial counsel was ineffective in failing to object to two specific statements the prosecutor made during closing argument. Specifically, Favors asserts error in the prosecutor's invitation to jurors to "imagine what would be going through their minds, Mr. Barber's mind, the defendants' minds" as they faced one another after the co-defendants broke through Barber's door. Favors claims this statement constitutes a prohibited "golden rule" argument. See Jackson v. State, 282 Ga. 494 (5) (651 SE2d 702)

10

(2007) (explaining that a "golden rule" argument "'either directly or by implication, tells the jurors . . . that they should put themselves in the injured person's place and render such a verdict as they would wish to receive were they in the (injured person's) position'"). In addition, Favors takes issue with the prosecutor's statement to the effect that a juror's job is "to seek the truth. It's not to look for doubt." Favors claims this argument misstated the quantum of proof required to convict and served to lessen jurors' sense of responsibility. Pretermitting whether either of these statements would have given rise to a valid objection at trial, we find, given the isolated nature of each of these remarks and the wide latitude afforded counsel in closing argument, that trial counsel did not perform in an objectively unreasonable manner in failing to object thereto, nor did Favors' defense suffer prejudice therefrom. See Smith v. State, 284 Ga. 599 (2) (a) (669 SE2d 98) (2008) (counsel's failure to object to "handful of comments" by prosecutor during closing was neither objectively unreasonable nor prejudicial to defense).

5. Favors asserts that the trial court erroneously sentenced him on the two firearm possession counts. Though we disagree with Favors' contention, we have noted an error with regard to the merger of certain counts for judgment and

11

sentencing. See Hulett v. State, 296 Ga. 49 (2) (766 SE2d 1) (2014) (merger error, even if it is not raised by the parties, may be addressed by appellate court sua sponte). As noted in footnote 1, supra, the trial court imposed a life sentence for malice murder; two five-year terms for firearm possession, to run concurrent with one another but consecutive with the life sentence; and a concurrent five-year term for aggravated assault on a peace officer. The court purported to "merge" the two felony murder verdicts, as well as the verdicts for aggravated assault and burglary, into the malice murder verdict.

As to the two felony murder counts, the trial court merely used incorrect nomenclature, as these verdicts did not "merge" into the malice murder verdict but rather were vacated by operation of law. See Hulett, 296 Ga. at 53 (when valid guilty verdict is returned on both malice murder and felony murder of the same victim, defendant should be sentenced for malice murder, and alternative felony murder verdicts stand vacated by operation of law). With the felony murder verdicts vacated, the aggravated assault and burglary counts on which the felony murder counts were predicated must be evaluated to determine whether either of these verdicts merged as a matter of fact into the malice murder. See id.

12

To determine whether one crime is included in another, and therefore merges as a matter of fact, the court must assess "whether conviction for one of the offenses is established by proof of the same or less than all the facts required to establish the other crime." Grissom v. State, No. S14A1431, 2015 WL 240477, at *3 (1) (decided Jan. 20, 2015). Both the malice murder and the aggravated assault counts, as indicted, were premised on the act of shooting Barber with a firearm. Because there is no evidence to suggest the occurrence of "an aggravated assault independent of the act which caused the victim's death," see Coleman v. State, 286 Ga. 291, 295 (3) (687 SE2d 427) (2009), we conclude that the verdict on the aggravated assault alleged in Count 4 of the indictment merges as a matter of fact with the malice murder verdict for sentencing purposes. The burglary count, on the other hand, does not merge with malice murder as a matter of law, because each crime by definition requires proof of an element that the other does not. Compare OCGA § 16-5-1 (defining malice murder), with OCGA § 16-7-1 (defining burglary).

Regarding the firearm possession counts, these counts were predicated, respectively, on aggravated assault and burglary. We have held that OCGA § 16-11-106 permits one firearm possession conviction as to each victim in a

13

criminal transaction under subsection (b) (1) as well as an additional conviction for firearm possession during the commission of the crimes enumerated in subsections (b) (2) through (b) (5).  State v. Marlowe, 277 Ga. 383 (2) (c) (589 SE2d 69) (2003).  Because the crime of burglary falls within subsection (b) (2) of OCGA § 16-11-106, it was thus proper for the trial court to impose separate sentences on each of the two firearm possession counts.

Accordingly, we vacate the sentencing order insofar as it purported to "merge" the two felony murder verdicts into the malice murder verdict; these verdicts, rather, stand vacated by operation of law.  We also vacate the sentencing order insofar as it merged the burglary verdict into the malice murder verdict, and we direct the trial court to enter judgment and impose a sentence thereon.

Judgment affirmed in part and vacated in part and case remanded for resentencing.  All the Justices concur.