**FIRST DIVISION**
**BARNES, P. J.,**
**MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**January 14, 2019**

# In the Court of Appeals of Georgia

A19A0529. CARCAMO v. THE STATE.

BARNES, Presiding Judge.

Following a trial with a co-defendant, the jury found Andy Fabricio Carcamo Maradiaga guilty of rape and kidnapping. Carcamo[1] appeals from his conviction and sentence, as well as the denial of his motion for new trial, arguing that the trial court erred in denying his motion to sever his trial from that of his co-defendant and that his trial counsel rendered ineffective assistance. For the reasons discussed more fully below, we affirm.

After a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant is no longer presumed innocent. *Person v. State*, 340

---

[1] In the proceedings below, the parties and trial court referred to the appellant as "Mr. Carcamo." For ease of reference, we will refer to him throughout this opinion as "Carcamo."

Ga. App. 252, 252-253 (797 SE2d 172) (2017). So viewed, the evidence showed that on the night of November 29, 2014, the victim and her twin sister were celebrating their twenty-first birthdays with friends in the downtown area of Savannah, Georgia. The celebration lasted into the early morning hours of November 30, 2014, and the victim became heavily intoxicated. Around 2:18 a.m., the victim and one of her friends were escorted out of a club after an employee discovered them sitting on a back stairwell that was not open to patrons. According to the employee, the victim and her friend were noticeably intoxicated, and he "had to hold them up while bringing them out" of the club. Once outside the club, the victim remained near the front door because she was unable to stand on her own and kept falling down. While outside, the victim became separated from her friend.

Carcamo and his friend (co-defendant Eric Fernando Reyes Castro)[2] were at the same club that night. Carcamo was standing near the front door of the club when he saw the victim repeatedly fall to the ground after the employee escorted her outside. Carcamo and Reyes approached the victim, supported her on her feet, and "were trying to take her" when a club employee who believed the situation was a "little

_____

[2] The co-defendant also goes by the name "Eric Reyes," and for ease of reference, we will refer to him throughout this opinion as "Reyes."

sketchy" began questioning them. Carcamo and Reyes assured the employee that the victim "was their good friend and they would take care of her," and the employee let them go. Carcamo and Reyes placed the victim's arms over their shoulders and supported her weight between them as they walked with her away from the club while her head hung toward the ground.

After walking away from the club, Carcamo lifted up the victim and carried her down the street as Reyes followed behind them while talking on his cell phone. When they reached the parking lot where Reyes's car was parked, Reyes unlocked his vehicle and opened the door, and Carcamo placed the victim on the backseat, where he had sexual intercourse with her while she was unconscious. Reyes stayed on his cell phone and got in and out of the front seat of the car.

A military serviceman who was walking in the area saw Carcamo carrying the unconscious victim down the street followed by Reyes on his cell phone. According to the serviceman, Carcamo kept looking back at Reyes and nodding for him to hurry up. Because something "did not seem right," the serviceman followed them until they arrived at Reyes's car. The serviceman could not see what then occurred in the backseat because the windows were fogged from the inside, but he saw Reyes on his phone getting in and out of the car.

The serviceman left the scene and located two police officers about a half a block away from the parking lot, and he told them what he had observed. The two officers immediately proceeded to the parking lot on foot and were joined by another officer and a detective who were already in the area. The officers and detective approached the parked car and saw Reyes in the front seat and Carcamo in the backseat having sexual intercourse with the unconscious victim. Reyes got out of the car and claimed not to know Carcamo or the victim. Carcamo pulled up his pants and got out of the car, but the victim remained motionless in the backseat with her genitals exposed. According to one officer, the victim "appeared lifeless, was not moving, and at that point I couldn't even tell if she was breathing or not." The detective described the victim as "exposed, unconscious, [and] not moving" and testified that he "didn't know if she was . . . dead or alive at that point." After several minutes, the detective was able to get the victim to sit up, but she vomited several times, drifted in and out of consciousness, spoke incoherently, and could not stand up. The detective used the victim's cell phone to call her sister, and the victim's sister and friends then came to the scene and told the detective that they did not know Carcamo and Reyes and did not know why the victim would have been with them.

Carcamo and Reyes were detained and taken to police headquarters, while the victim was transported by ambulance to the hospital. The detective went to the hospital and interviewed the victim, who was still heavily intoxicated at that point and did not remember what had happened. The interview was audio-recorded and was later played for the jury, and the victim testified at trial that she did not know Carcamo and Reyes and had no memory of what had occurred with them that night.

A nurse at the hospital performed a sexual assault examination on the victim and noted that she was heavily intoxicated, was in and out of consciousness, was disoriented, and had vomit in her hair, a red mark on her shoulder, bruising on her knee, and dirt on her leg. The nurse took vaginal and other swabs from the victim as well as blood and urine samples. A blood toxicology test showed that the victim had a blood alcohol level of .197 grams per 100 milliliters, which, according to a forensic toxicology expert who testified at trial, would have been between .242 and .272 grams per 100 milliliters approximately three hours before the victim's blood was drawn. The toxicologist opined that at that blood alcohol level, the average social drinker would experience mental confusion, double or blurred vision, heavily slurred speech, and lack of muscle coordination.

After interviewing the victim at the hospital, the detective went to police headquarters, where Reyes agreed to an interview. Reyes told the detective that he and Carcamo were friends but had arrived separately at the club; that Carcamo introduced the victim as his girlfriend; that Carcamo asked him for a ride home; and that he had agreed to provide Carcamo a ride. Reyes said that he did not know the victim's name, and at one point during the interview, according to the detective, Reyes "shook his head and mentioned something about being stupid or doing something stupid, something to that effect." Although Reyes initially claimed that all three of them had walked to the car, Reyes later admitted that the victim had not walked. Reyes also said that when they were in the car, he had been talking to his girlfriend and texting on his cell phone, and he had heard Carcamo and the victim talking and having sex in the backseat.

The detective seized Reyes's cell phone, and a digital forensic examination of the phone was conducted after a search warrant was obtained. During the approximate time period when the victim was inside Reyes's car, Reyes's phone contained incoming and outgoing calls to a "Carlos Gomez," as well as a text message written in Spanish to "Carlos" using the WhatsApp Chat application. The text message, when translated into English by an expert translator at trial, read: "Carlos, a drunken broad

6

landed here. Bring the sweater and we're going to mount her." The translator testified that "sweater" in this context could be slang for "condom."

Reyes agreed to a second interview with the detective, who confronted him with the text message. Reyes admitted that one of the Spanish phrases in the text message referred to "a girl who was really drunk" and that another phrase meant "to fuck." Reyes initially denied that he had planned to have sex with the victim, but then admitted, when the detective confronted him with the specific wording of the text message, that he and Carcamo "were going to have sex with the girl."

The detective obtained a search warrant for swabs from Carcamo for the purpose of a DNA comparison. When the detective was collecting the swabs, Carcamo made the unprompted statement, "I'm sorry for last night." Subsequent DNA testing showed Carcamo's DNA present on swabs taken from the victim's vagina and the victim's DNA on swabs taken from Carcamo's penis, and the DNA results were introduced at trial through the forensic biologist who performed the testing at the crime lab.

As part of his investigation, the detective also obtained video camera footage from several locations in the downtown Savannah area, including footage from the club, a nearby restaurant, and the city's street cameras. The detective compiled a

single video of the relevant time periods from the video camera footage, which was introduced as an exhibit at trial by stipulation of the parties and played for the jury.[3] Among other things, the video footage showed Carcamo and Reyes walking away from the club with the victim between them with her arms over their shoulders as her head hung toward the ground, and Carcamo then carrying the motionless victim down the street as Reyes followed him.

Carcamo and Reyes were indicted on charges of rape and kidnapping. Carcamo filed a motion to sever his trial from that of Reyes, and the trial court denied the motion. At the ensuing joint trial, after the State presented its case-in-chief, Reyes elected not to testify. Carcamo took the stand and testified that he and Reyes had come to the club in Reyes's car and that they had been at the club with another friend named Carlos Gomez. Carcamo testified that he approached the victim after she fell outside the club and her friend left, and he admitted that the victim had been drunk, that she had trouble walking, that he had picked up the victim and carried her, that he put her in the car, and that he had sex with her. However, Carcamo claimed that the victim was "[d]runk, but not unconscious," that he had initiated the sexual encounter

---

[3] The original video recordings also were marked as exhibits and introduced into evidence, but they were not separately played for the jury.

after they briefly talked in the backseat of the car, and that he did not force the victim to have sex with him. Carcamo testified that the reason he told the detective he was "sorry for last night" was because he was afraid that the victim was a minor.

The jury found Carcamo guilty of the charged offenses.[4] The trial court conducted a sentencing hearing, and on the rape count, the court sentenced Carcamo to 25 years in prison without the possibility of parole, followed by life on probation. On the kidnapping count, the trial court sentenced Carcamo to 15 years in prison without the possibility of parole, consecutive to the rape count. Carcamo filed a motion for new trial, as amended, in which he contended, among other things, that his trial counsel had rendered ineffective assistance. Following a hearing on the motion for new trial in which Carcamo's trial counsel testified, the trial court denied the motion, resulting in the present appeal.

1. Carcamo contends that the trial court erred by failing to sever his trial from that of Reyes.

"When two or more defendants are jointly indicted . . . for a felony less than capital, . . . such defendants may be tried jointly or separately in the discretion of the trial court." OCGA § 17-8-4 (a). "Since the grant or denial of a motion to sever is left

_____

[4] The jury also found Reyes guilty of the charged offenses.

9

in the discretion of the trial court, its ruling will only be reversed for an abuse of discretion." *Baker v. State*, 238 Ga. 389, 391 (2) (233 SE2d 347) (1977).

> It is incumbent upon the defendant who seeks a severance to show clearly that the defendant will be prejudiced by a joint trial, and in the absence of such a showing, the trial court's denial of a severance motion will not be disturbed. Factors to be considered by the trial court are: whether a joint trial will create confusion of evidence and law; whether there is a danger that evidence implicating one defendant will be considered against a co-defendant despite limiting instructions; and whether the defendants are asserting antagonistic defenses. The burden is on the defendant requesting the severance to do more than raise the possibility that a separate trial would give him a better chance of acquittal. He must make a clear showing of prejudice and a consequent denial of due process.

(Citations and punctuation omitted.) *Daniel v. State*, 285 Ga. 406, 407-408 (3) (677 SE2d 120) (2009).

On appeal, Carcamo focuses exclusively on the second factor, the possibility that evidence admissible only against Reyes was considered against him in the joint trial. More specifically, Carcamo's sole argument is that severance was required pursuant to *Bruton v. United States*, 391 U.S. 123 (88 SCt 1620, 20 LE2d 476) (1968). Under *Bruton*, a defendant is deprived of his rights under the Confrontation

10

Clause to the Sixth Amendment when the defendant is tried jointly with a co-defendant who elects not to testify, and the co-defendant's out-of-court testimonial statement directly implicating the defendant as a participant in the crime is introduced into evidence. See id. at 126; *Thomas v. State*, 300 Ga. 433, 439-440 (2) (a) (3) (796 SE2d 242) (2017); *Favors v. State*, 296 Ga. 842, 845 (1) (770 SE2d 855) (2015). Because Reyes elected not to testify, Carcamo asserts that *Bruton* was violated by the admission of (a) Reyes's text message to Carlos and (b) Reyes's statements to the detective about Carcamo during his first and second police interviews.

(a) As previously noted, Reyes's text message to Carlos, when translated from Spanish into English by the expert translator at trial, read: "Carlos, a drunken broad landed here. Bring the sweater and we're going to mount her." Contrary to Carcamo's assertion on appeal, admission of the text message did not violate *Bruton*.

"*Bruton* excludes only the statement of a nontestifying co-defendant that standing alone directly inculpates the defendant. By contrast, *Bruton* is not violated if a co-defendant's statement does not incriminate the defendant on its face and only becomes incriminating when linked with other evidence introduced at trial." (Citations and punctuation omitted.) *Simpkins v. State*, 303 Ga. 752, 755-756 (II), (814 SE2d 289) (2018). The text message at issue did not refer to Carcamo by name;

11

rather, it used the word "we're" in referring to those involved in the incident. Hence, standing alone, the text message fell outside the ambit of *Bruton* as it did not directly implicate Carcamo and became inculpatory only when linked with other evidence introduced at trial. See *Thomas*, 300 Ga. at 439-440 (2) (a) (3) (witness's use of pronoun "they" in describing non-testifying co-defendant's statement did not directly implicate defendant and thus did not violate *Bruton*); *McLean v. State*, 291 Ga. 873, 875-876 (3) (738 SE2d 267) (2012) (evidence admitted at joint trial that a non-testifying co-defendant made a statement after shooting that "they" had thrown gun out of vehicle did not directly implicate the defendant and therefore did not violate *Bruton*).

Additionally, "*Bruton* . . . applies only to out-of-court statements by non-testifying co-defendants that are 'testimonial' in nature. A statement is testimonial if its primary purpose was to establish evidence that could be used in a future prosecution." (Citations and punctuation omitted.) *Favors*, 296 Ga. at 845 (2). Testimonial statements include "affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially." *Crawford v. Washington*, 541 U.S. 36, 51 (III) (A) (124 S. Ct. 1354, 158 LE2d 177) (2004).

12

Here, the statement in question was in the form of a text message addressed to an acquaintance rather than a statement made to law enforcement or a statement made in a formal legal document or court proceeding. Furthermore, the text message was sent during the approximate time period when Reyes and Carcamo were at the car with the unconscious victim, and in the message, Reyes explained to Carlos what was transpiring and told him to bring a condom. Clearly, the text message was not written with the primary purpose of being using in a future criminal prosecution; rather, it was written in furtherance of a conspiracy to rape the victim. See, e.g., *State v. Wilkins*, 302 Ga. 156, 159 (805 SE2d 868) (2017) ("Statements made to solicit membership or participation in the conspiracy and statements explaining the conspiracy to a new member are made in furtherance of the conspiracy.") (citation and punctuation omitted).[5] Accordingly, the text message was non-testimonial in

---

[5] Under Georgia's Evidence Code, there is a hearsay exception for statements of a co-conspirator made during the course of and in furtherance of the conspiracy. See OCGA § 24-8-801 (d) (2) (E) ("Admissions shall not be excluded by the hearsay rule. An admission is a statement offered against a party which is: . . . A statement by a coconspirator of a party during the course and in furtherance of the conspiracy, including a statement made during the concealment phase of a conspiracy. A conspiracy need not be charged in order to make a statement admissible under this subparagraph."). The Supreme Court of Georgia has noted:

> For evidence to be admissible under [OCGA § 24-8-801 (d) (2) (E)], the government must prove the existence of a conspiracy by a preponderance of the evidence. In determining the existence of a

13

nature, and its admission therefore did not violate *Bruton*. See *Favors*, 296 Ga. at 845 (2) (conversation in furtherance of conspiracy was non-testimonial); *Allen v. State*, 300 Ga. 500, 504 (3) (796 SE2d 708) (2017) (co-defendant's statement to third party civilian was non-testimonial); *Ray v. State*, 338 Ga. App. 822, 829-830 (2) (792 SE2d 421) (2016) (statements by co-defendants in furtherance of conspiracy were non-testimonial). See also *Bell v. Stoddard*, No. 14-12182, 2018 U. S. Dist. LEXIS 193834, at *14-16 (E. D. Mich. Nov. 14, 2018) (text messages between co-defendants and third party civilian were not testimonial); *United States v. Archibald*, No. CR 2015-0041, 2016 U. S. Dist. LEXIS 179229, at *5-6 (D. V. I. Dec. 28, 2016) (co-defendant's text message to third-party civilian was not testimonial); *State v. Goodwin*, No. W2015-00813-CCA-R3-CDC (C), 2017 Tenn. Crim. App. LEXIS, at *47-50 (Tenn. Crim. App. June 7, 2017) (text-messages made in furtherance of

---

conspiracy, the trial court may consider both the co-conspirator's statements and independent external evidence, although the co-conspirator's statement alone does not suffice. In considering whether a conspiracy was established for purposes of the rule, we do not require that the conspiracy be proven prior to the admission of the evidence in question, but only that the conspiracy was proven at trial.

(Citations, punctuation, and footnotes omitted.) *Dublin v. State*, 302 Ga. 60, 63 (1) (805 SE2d 27) (2017). Here, there was evidence adduced at trial of a conspiracy between Carcamo and Reyes to kidnap and rape the victim, independent of the text message, including the eyewitness testimony of the club employee, the military serviceman, and the responding officers, as well as the video camera footage.

14

conspiracy were non-testimonial). And, given that there was no *Bruton* violation, the text message was not a basis for severance of Carcamo's trial. See *Ray*, 338 Ga. App. at 830 (2).

(b) In his first and second interviews with the detective, Reyes stated, among other things, that he was friends with Carcamo but had arrived separately at the club that night; that Carcamo was with the victim at the club and introduced her as his girlfriend; that all three of them went to his car but the victim was unable to walk on her own; that he heard Carcamo and the victim talking and having sex in the backseat of the car; that his text message to Carlos referred to "a girl who was really drunk" and that the Spanish word for "mount" in the message meant "to fuck"; and that both he and Carcamo planned to have sex with the victim. Pretermitting whether admission of any of these statements by Reyes constituted a *Bruton* violation, we conclude that it was harmless error.

> [I]n some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the codefendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error. Whether a violation of the Confrontation Clause is harmless depends on a host of factors, including the importance of the witness'[s] testimony in the prosecution's case, whether the testimony was cumulative, the

15

presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

(Citations and punctuation omitted.) *Collum v. State*, 281 Ga. 719, 721-722 (2) (642 SE2d 640) (2007). See *Schneble v. Florida*, 405 U. S. 427, 430 (92 SCt 1056, 31 LE2d 340) (1972).

Carcamo has not shown that he was harmed by the admission of Reyes's statements to the detective. Almost all of Reyes's statements to the detective were entirely cumulative of other evidence introduced in the case, including the video footage from the club, the nearby restaurant, and the city's street cameras; the eyewitness accounts of the club employee, the military serviceman, and the responding officers; Carcamo's own trial testimony; and the testimony of the Spanish translator regarding the meaning of the text message. Furthermore, the State's case against Carcamo was very strong and was supported by, among other things, the video camera footage that showed Carcamo holding up the victim and moving her away from the club as her head hung down and then carrying the unconscious victim down the street, the serviceman's testimony that the victim was unconscious as Carcamo was carrying her, and the responding detective's testimony that he saw

16

Carcamo having sex with the unconscious victim in the backseat of the car. And, the detective testified that Carcamo spontaneously told him he was "sorry for last night," and Carcamo admitted on the stand that the victim had been drunk, that he assisted her in walking and carried her down the street, that he placed her in the car, and that he had sex with her. And, although Reyes stated (in contrast to other evidence introduced at trial) that he and Carcamo had arrived separately at the club and that Carcamo introduced the victim as his girlfriend, these discrepancies played little or no role in the State's case against Carcamo, which was predicated on the video camera footage, the eyewitness accounts of what transpired, and Carcamo's own admissions.

Considering all of these factors, we conclude that it is clear beyond a reasonable doubt that the alleged improper admission of Reyes's statements to the detective was harmless. See *Collum*, 281 Ga. at 722 (2); *Laye v. State*, 312 Ga. App. 862, 870-871 (2) (720 SE2d 233) (2011). Compare *Meadows v. State*, 264 Ga. App. 160, 166 (5) (590 SE2d 173) (2003) (holding that *Bruton* violation constituted reversible error, where "only evidence directly identifying [defendant] as one of the men at the victim's door was [co-defendant's] improperly admitted statement"). "Given that any *Bruton* violation was harmless, we conclude that because [Carcamo]

17

has failed to show that he was prejudiced by being tried jointly with [Reyes], the trial court did not abuse its discretion in denying his motion to sever." (Citation and punctuation omitted.) *Laye*, 312 Ga. App. at 871 (3).

2. Carcamo contends that his trial counsel rendered ineffective assistance in several respects.[6]

> To prevail on this claim, [Carcamo] bears the burden of proving both that the performance of his lawyer was deficient and that he suffered prejudice as a result of this deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). . . . If a defendant fails to meet his burden on one prong of the two-prong test, then the other prong need not be reviewed by the court. In addressing claims of ineffective assistance of counsel, we review the trial court's legal conclusions de novo and its factual findings under the clearly erroneous standard.

---

[6] While Carcamo enumerates as error that his trial counsel provided ineffective assistance, in the argument section of his brief he also argues that the trial court erred in making certain evidentiary rulings and should have sua sponte made other rulings. But, "[a]n appealing party may not use its brief to expand its enumeration of errors by arguing the incorrectness of a trial court ruling not mentioned in the enumeration of the errors." (Citation and punctuation omitted.) *Taylor v. State*, 303 Ga. 624, 628 (1), n. 2 (814 SE2d 353) (2018). See *Riggs v. State*, 319 Ga. App. 189, 198 (5) (733 SE2d 832) (2012) ("A party cannot expand his enumerations of error through argument or citation in his brief.") (citation and punctuation omitted). We therefore decline to address these arguments.

18

(Citations and punctuation omitted.) *Ramirez v. State*, 345 Ga. App. 611, 618 (3) (814 SE2d 751) (2018). Guided by these principles, we turn to Carcamo's specific allegations of deficient performance.

(a) Carcamo contends that in addition to filing a motion to sever, his trial counsel should have raised a specific objection based on *Bruton* when the State sought to introduce into evidence Reyes's text message to Carlos and Reyes's statements to the detective. By failing to do so, Carcamo argues that his trial counsel was ineffective. We are unpersuaded. As noted supra in Division 1 (a), admission of the text message did not violate *Bruton*, and "[f]ailure to make a meritless objection cannot be evidence of ineffective assistance." (Citations and punctuation omitted.) *Fults v. State*, 274 Ga. 82, 87 (7) (548 SE2d 315) (2001). With regard to Reyes's statements to the detective, the admission of those statements, even if erroneous, was harmless for the reasons explained supra in Division 1 (b), and thus Carcamo cannot show a reasonable probability that the result of his trial would have been different, but for his trial counsel's failure to object to the admission of those statements. See *Battle v. State*, 301 Ga. 694, 701 (4) (804 SE2d 46) (2017). Consequently, Carcamo's ineffective assistance claim predicated on the alleged *Bruton* violations must fail. See id.

19

(b) During the detective's direct testimony, when asked by the prosecutor why he could not forget this case, the detective responded, "It was awful and being there myself." To the extent that Carcamo claims that his trial counsel committed ineffective assistance with respect to the detective's testimony, his claim is without merit. The record reflects that Carcamo's trial counsel objected to the detective's testimony, and the trial court subsequently struck the testimony and gave a curative instruction. Under these circumstances, Carcamo has failed to show either that his counsel was deficient or that he suffered any prejudice resulting from the detective's testimony.

(c) On his Facebook page, Carcamo went by the nickname "Animal" and posted sexual images. After the trial court ruled that Carcamo had opened the door to cross-examination about his Facebook page, the prosecutor cross-examined Carcamo about the page and referred to it during closing argument. On appeal, Carcamo argues that his trial counsel was ineffective in failing to properly object, but we are unpersuaded.

The record reflects that Carcamo's trial counsel objected to the prosecutor's cross-examination of Carcamo about the Facebook page on the grounds that the prosecutor had failed to lay a proper foundation and that the prejudicial effect of the

page outweighed its probative value. To the extent that Carcamo contends that his trial counsel was ineffective by failing to raise additional objections to the cross-examination and by not objecting to the prosecutor's closing argument, he cannot succeed on his ineffective assistance claim. Pretermitting whether Carcamo opened the door to being cross-examined about the Facebook page and whether his trial counsel was deficient in any respect, we conclude that in light of the strength of the evidence of his guilt, Carcamo has failed to show a reasonable probability that the result of his trial would have been different but for the alleged deficiencies. See *Brannon v. State*, 298 Ga. 601, 611 (7) (783 SE2d 642) (2016) ("[F]ailure to satisfy either prong of the *Strickland* test is sufficient to defeat a claim of ineffective assistance, and it is not incumbent upon this Court to examine the other prong.") (citation and punctuation omitted).

(d) When cross-examining Carcamo, the prosecutor questioned him about his recent prior arrest for certain traffic violations. Carcamo appears to argue that his trial counsel was ineffective for failing to object when the prosecutor cross-examined him about the arrest. We disagree because Carcamo opened the door to the questioning.

Earlier in his testimony, Carcamo volunteered that he had "never had any problems with the law before." By making such a statement, Carcamo opened the

21

door to the prosecutor impeaching his testimony by questioning him about his prior arrest. See OCGA § 24-6-621 ("A witness may be impeached by disproving the facts testified to by the witness."); *Parker v. State*, 339 Ga. App. 285, 290-291 (793 SE2d 173) (2016) (State was entitled to impeach defendant with evidence of prior charge, where defendant had testified that he had never "been in no situation like this"); *Osborne v. State*, 193 Ga. App. 276, 278 (4) (387 SE2d 383) (1989) (State was entitled to impeach defendant with evidence of prior arrest on an unrelated charge, where the defendant testified that he had "never been in trouble before"). Consequently, the prosecutor's questioning of Carcamo about his prior arrests was proper under the circumstances, and failure to raise a futile objection does not constitute ineffective assistance. See *Fults*, 274 Ga. at 87 (7). In any event, because of the strength of the evidence, Carcamo cannot show a reasonable probability that the outcome of his trial would have been different, but for the alleged deficiency.

(e) During closing argument, the prosecutor pointed out that while Carcamo had testified that he never had any previous problems with the law, he in fact had been arrested for several traffic violations. Carcamo asserts that his trial counsel was ineffective for failing to object to the closing argument. We are unpersuaded.

22

"As a general rule, prosecutors are granted wide latitude in conducting closing argument[.]" (Citation and punctuation omitted.) *Thompson v. State*, 321 Ga. App. 756, 758 (743 SE2d 446) (2013). And, prosecutors are entitled to refer in closing argument to properly admitted evidence and "to make an argument that [the defendant] was dishonest, as a reasonable deduction from the evidence presented." *Davis v. State*, 264 Ga. App. 128, 136 (7) (b) (589 SE2d 700) (2003). As noted supra in Division 2 (d), the prosecutor was entitled to impeach Carcamo with evidence of his prior arrest because Carcamo opened the door to it. Consequently, the prosecutor was entitled to refer to that impeachment evidence during closing argument, and Carcamo's trial counsel was not deficient for failing to object. See id. See also *Walker v. State*, 280 Ga. App. 457, 463 (6) (b) (634 SE2d 93) (2006) (failure to raise futile objection to prosecutor's comment during closing argument did not constitute deficient performance). Furthermore, in light of the strength of the evidence, Carcamo has not shown a reasonable probability that the outcome of his trial would have been different, but for the alleged deficiency in failing to object.

(f) When the prosecutor questioned Carcamo about his prior arrest for traffic violations, Carcamo gave a non-responsive answer, stating "I'm illegal in this country. I cannot have a driver's license and that was my first ticket." The prosecutor

then asked the follow-up question, "I'm sorry, I'm not sure I heard the first sentence. Did you say you are legal or illegal?," and Carcamo responded, "Illegal." The prosecutor did not question Carcamo any further about his status. On appeal, Carcamo maintains that his trial counsel was ineffective for failing to object when the prosecutor asked Carcamo the follow-up question about his immigrant status after Carcamo volunteered that he was an illegal immigrant because the question further highlighted his illegal status, which had no relevance to the trial. We discern no ineffective assistance.

Carcamo's trial counsel did not object to the prosecutor's follow-up question about whether Carcamo was legal or illegal, but he raised the issue in closing argument, noting that Carcamo had voluntarily disclosed his illegal status, but that the prosecutor had then chosen to reiterate the point in a follow-up question. Trial counsel asked rhetorically, "[D]oes that mean [the prosecutor] wants you to convict him because he's an illegal alien?"

At the hearing on the motion for new trial, trial counsel was asked why he did not object to the prosecutor's question regarding Carcamo's illegal immigrant status, and counsel explained:

So in that regard I probably didn't object to that because it wasn't elicited from – his answer wasn't elicited as a direct question from the State. It was something that just came out as his response to why he didn't have a license. She didn't ask him if he was an illegal alien to begin with. He just was explaining why he couldn't get a license. So in that regard, I mean at that point I didn't think there was anything to object to. I mean it wasn't something the State was probing into. It just came out. And in a way I felt like well, maybe it didn't hurt us after all because it shows the jury that he was being honest about everything. Wasn't afraid to hold anything back. So that's kind of why I didn't object to it and didn't really even think about objecting to it at that point. You know, I think if [the prosecutor] had gone into it a little bit further I may have objected. But she pretty much let it drop right after that.

"Trial tactics and strategy, no matter how mistaken in hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them." (Citation and punctuation omitted.) *Hardin v. State*, 344 Ga. App. 378, 383 (1) (b) (810 SE2d 602) (2018). Reasonable decisions regarding whether to forego raising a specific objection "are ordinarily matters of trial strategy and provide no ground for reversal." (Citation and punctuation omitted.) Id. And, a decision to wait and respond to certain questioning of a witness during closing argument, instead of objecting at the time of the questioning, can be a reasonable trial strategy. See *Boggs v. State*, 304 Ga. App.

25

698, 704-705 (5) (a) (697 SE2d 843) (2010). Accordingly, trial counsel's strategic decision to forego objecting to the prosecutor's follow-up question about Carcamo's immigrant status and instead to address the issue in closing argument did not constitute ineffective assistance. Moreover, based on the strength of the evidence, Carcamo has not shown a reasonable probability that the outcome of his trial would have been different if his counsel had objected.

(g) During closing argument, the prosecutor referred to Carcamo's illegal immigrant status, and Carcamo asserts that his trial counsel was ineffective in failing to object. We do not agree.

During the defense's closing argument, as noted above in Division 2 (f), Carcamo's trial counsel referred to the prosecutor's follow-up question to Carcamo about his immigrant status and insinuated that the prosecutor wanted the jury to convict him based on the fact that he was an illegal immigrant. In response, the prosecutor stated during closing argument:

> And then the third thing, which frankly I take great offense to, is that [Carcamo's trial counsel] said that I said to him on his last question ["]what did you say,["] when he talked about his status in this country. I hope you caught the intonation of my voice, I was surprised that's why I asked that. I did not hear him. I could not imagine that he had just told you he was an illegal immigrant. I really was not sure what I had heard.

26

And so, as it is incumbent upon us to do, just as you need to hear the evidence, I needed to know what he said. And so, in fact, he told you that; I didn't ask him that. I didn't stand behind this table and say, "Excuse me, are you in this country legally?" You never heard me ask him that. That was not, at that point, relevant. It only became relevant because Mr. Carcamo told you that himself and I wanted to make sure that I heard the evidence.

"[A] prosecutor [is] entitled . . . to respond to points made in—and issues omitted from—the defendant's closing argument." *Spivey v. State*, 253 Ga. 187, 189 (3) (a) (319 SE2d 420) (1984). When read in context, the record in this case reflects that the prosecutor's comment regarding Carcamo's illegal immigrant status was made in response to and in an effort to diffuse defense counsel's comment during closing argument. Because the prosecutor's comment was not improper under these circumstances, Carcamo's trial counsel was not deficient for failing to object. See *Walker*, 280 Ga. App. at 463 (6) (b). In light of the strength of the evidence, Carcamo also has not shown a reasonable probability that the outcome of his trial would have been different, but for the alleged deficiency.

(h) Carcamo argues that the prosecutor appealed to the jury's sympathies and prejudices by emphasizing during closing argument that the victim and her friends

27

were "average Americans," and that his trial counsel should have objected. Again, we disagree.

During closing argument, the prosecutor, referring to the victim and her friends, commented: "[T]hese young ladies are average Americans who, when they reached the legal age to drink, they did what we all do, they went out and they drank, and they drank a lot." When read in context, the prosecutor's remark was not intended to appeal to nationalist sympathies or as a comment on the victim's nationality, but rather was intended to make the point that the victim's intoxication was not unusual for a 21st birthday and should not be held against her during the jury's deliberations. Consequently, the prosecutor's comment was not improper, and Carcamo's trial counsel was not deficient for failing to object to it. See *Walker*, 280 Ga. App. at 463 (6) (b). And, given the strength of the evidence, Carcamo has not shown a reasonable probability that the outcome of his trial would have been different, but for the failure to object.

(i) Lastly, Carcamo contends that his trial counsel was ineffective in failing to object when references were made to his illegal immigrant status at the sentencing hearing by the prosecutor and victim. However, before sentencing Carcamo, the trial court expressly stated that it was not basing Carcamo's sentence on his ethnicity or

28

status in this country. Accordingly, Carcamo has not shown a reasonable probability that his sentence would have been different, but for his counsel's alleged deficiency in failing to object, and thus he cannot succeed on his ineffective assistance claim. See *Hernandez v. State*, 303 Ga. App. 103, 106 (2) (692 SE2d 712) (2010).

(j) Citing to *Schofield v. Holsey*, 281 Ga. 809, 812 (II), n.1 (642 SE2d 56) (2007), Carcamo argues that the combined effect of his trial counsel's alleged deficiencies must be considered in determining prejudice. However, to the extent that we have assumed any deficiencies by trial counsel in the discussion above, we conclude as a matter of law that the absence of those deficiencies would not in reasonable probability have changed the outcome of Carcamo's trial. See *Carrie v. State*, 298 Ga. App. 55, 64 (7) (679 SE2d 30) (2009). The trial court therefore did not err in denying Carcamo's claims of ineffective assistance of counsel.

*Judgment affirmed. Mercier and Brown, JJ., concur*.