**THIRD DIVISION
DOYLE, P. J.,
GOBEIL, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**May 26, 2023**

# In the Court of Appeals of Georgia

A23A0484. JEFFERSON v. THE STATE.

DOYLE, Presiding Judge.

Following a jury trial, Anthony Jefferson was convicted of one count each of child molestation[1] and aggravated child molestation.[2] Jefferson appeals the denial of his subsequent motion for new trial, arguing (1) that the trial court committed plain error by admitting certain DNA evidence and (2) that trial counsel was ineffective by: failing to object to the admission of such evidence and to portions of the State's closing argument regarding the DNA evidence and by failing to obtain a DNA expert. For the reasons that follow, we affirm.

---

[1] OCGA § 16-6-4 (a) (1).

[2] OCGA § 16-6-4 (c).

"On appeal from a criminal conviction, the defendant is no longer presumed innocent and all of the evidence is viewed in the light most favorable to the jury's verdict."[3] So viewed, the record shows that in 2017, the victim, who was ten years old at the time, was staying with a friend, the friend's mother, and Jefferson — the friend's mother's boyfriend. In January 2017, the victim awoke in the middle of the night with an upset stomach. When she was unable to rouse her friend's mother, she went into a bedroom where Jefferson was sleeping alone. Jefferson rubbed her stomach, and the victim then went into the attached bathroom and vomited. When she returned to the bedroom, the victim fell asleep on the floor with her blanket; she awoke to Jefferson "put[ting] his private part in [her] behind," which she also referred to as her "butt." Afterwards, Jefferson went to the bathroom, and the victim immediately awakened his girlfriend and told her what Jefferson did.

Jefferson's girlfriend called the police, and a detective from the DeKalb County Special Victims Unit interviewed the victim outside of the home. Thereafter, the victim was taken to the hospital, where a nurse practitioner performed a forensic sexual assault examination and collected a sexual assault kit. The exam revealed

---

[3] (Punctuation omitted.) *Fossier v. State*, 362 Ga. App. 184, 185 (1) (867 SE2d 545) (2021).

redness and multiple scratches/abrasions to the victim's anus; redness still present on the victim's anus at her two-week follow-up exam indicated to her doctor, however, that the redness "wasn't evidence of trauma." Leslie Diehl, a trained forensic interviewer and licensed clinical social worker, conducted a forensic interview with the victim. .

Police searched Jefferson's bedroom and found the victim's blanket on the floor, tissues from the trash, and Vaseline sitting on a night stand. Police interviewed Jefferson at the police station, and he denied the victim's molestation allegations. Jefferson was arrested and charged with aggravated child molestation and child molestation. While in jail awaiting trial, he sent his girlfriend a postcard stating: "I'm sorry that I have these blackouts under stress and pressure. I am seeking help for them. I promise to be more open minded in the future. I never thought I could work so hard and still fail. I love you, . . . and I'm sorry."

The victim testified at trial, detailing the assault. Jefferson's girlfriend also testified that the victim awakened her at 6:30 a.m. on January 20, 2017, and told her that Jefferson had "put his private part in [her] behind." The State played the victim's audiotaped interview with the detective and Jefferson's videotaped statement to police. It also played a videotape of Diehl's forensic interview of the victim, in which

she identified numerous contextual details the victim gave during the interview, including details about Jefferson's actions, the room, what was on television, a purple blanket that was on her during the molestation, and a tube of Vaseline that Jefferson applied to her "butt." She also testified that she saw no red flags indicating fabrication or coaching and that the victim's interview was consistent with an outcry of sexual abuse.

The GBI forensic DNA analyst who analyzed the victim's sexual assault kit testified that the vaginal/cervical swabs showed an absence of quantifiable human DNA. The rectal swabs showed an "inconclusive amount of human male DNA," which "did not meet the threshold to reliably conclude the presence of male DNA." The analyst explained that the rectal swab DNA value meant that "it's inconclusive, which means that there may be male DNA there, but we are not sure if it is, and it is too low for us to move forward to attempt to find a profile." She further clarified that "the instrument is picking up something. It could be male DNA or it could be a false positive."[4] The analyst's written report was admitted into evidence.[5]

---

[4] The analyst explained that in a validation study of the quantitation kit (the apparatus used to assess the amount and purity of nucleic acid in a mixture) used in her lab, "we . . . saw some samples that we knew were female. No male DNA should be in those samples, and . . . they were giving us a small quant value for male. But then we looked at those values and said, okay, its never above this value if it's a false

The State also introduced the testimony of B. M., who claimed that Jefferson molested her in Pennsylvania in 2000 when she was 11 years old. According to B. M., she was spending the night with her best friend, who was Jefferson's daughter ; she awoke in the middle of the night, and her pants were undone, her shirt was unbuttoned, and Jefferson was underneath her. He touched her breasts, buttocks, and vagina, fondling her under her underwear, and she felt his erection. B. M. jumped up and ran to her friend's room. B. M.'s friend told her aunt, and Jefferson was arrested.[6]

Jefferson testified at trial. He conceded that B. M. accused him of "touching her butt" in 2000, but he denied doing so. According to Jefferson, he went to court "a couple" of times for the crime[s] against B. M., but "they dropped the case," and he was never convicted. Jefferson further testified that in 2017, the victim in the instant case came to his room because her stomach was hurting, and he allowed her to watch television in his room on the couch with her purple blanket, and he slept on

positive. And that's where our inconclusive threshold comes in."

[5] The report states: "An inconclusive amount of human male DNA was obtained in the rectal swabs. . . . The detected male DNA value did not meet the threshold to reliably conclude the presence of male DNA. An absence of quantifiable human male DNA was obtained in the vaginal/cervical swabs. . . ."

[6] The State did not tender a conviction related to B. M.'s allegations.

the floor. According to Jefferson, the victim awoke and vomited in the bathroom, and when she returned, she moved to the floor, and he moved to the couch. Jefferson denied putting his finger or his penis on or in the victim's "butt." He conceded that he was unaware of any reason the victim, his girlfriend, or B. M. would have to fabricate their allegations/testimony.

During closing argument, the State argued that there was more human male DNA found on the victim's rectal swabs than on her vaginal/cervical swabs:

> A couple of last things that we have is the DNA results. An inconclusive amount of human male DNA on the rectal swabs. Now, the State is not saying that we can verify and conclusively say by a scientific certainty that there was male DNA on those swabs. But what we are saying is the allegation is contact with the rectum. Swabs were taken of the rectum and swabs were also taken of the vaginal and cervical area. And you saw the report. There's no allegation of vaginal cervical touching. In that report, there was an absence of human male DNA. But when it came to the rectal swabs, there was something more. An inconclusive amount.

The jury found Jefferson guilty of both child molestation and aggravated child molestation, and he was sentenced to serve life in custody.[7] In his subsequent motion for new trial, as amended, Jefferson argued in part that the trial court erred by

---

[7] The child molestation conviction merged into the aggravated child molestation conviction.

6

admitting into evidence the inconclusive DNA results and that trial counsel was ineffective.

Forensic DNA analyst Amy Mason, who was qualified as an expert without objection, testified for the defense at the motion for new trial hearing. Mason explained that based on her review of the materials,[8] the forensic lab that analyzed the rectal swabs from the victim's sexual assault kit performed a differential analysis, which separates out skin cells from sperm cells, and got results for both parts. The victim's rectal swabs showed a "zero quant" of male skin cell DNA, meaning "an absence of male [skin cell] DNA." Additionally, according to Mason, the swabs showed an "inconclusive" level of sperm cell DNA, which "says that you don't know. It tells you nothing conclusively. . . . [I]t doesn't reach or surpass a threshold . . . to confirm the presence of male DNA. . . [It] could be a false positive."[9] As Mason testified, neither the GBI report, which was admitted into evidence, nor the GBI analyst's testimony indicated that the analysis differentiated between skin and sperm

---

[8] The materials included the final lab report, an extraction worksheet, and another worksheet.

[9] Mason explained that the sperm cell analysis showed a result of 0.28 picograms per microliter, which did not meet the GBI threshold of 2.5 picograms per microliter to constitute a positive result.

cell DNA and that the rectal swabs contained zero male skin cell DNA. Mason therefore characterized the GBI report as "misleading and confusing."

The trial court denied Jefferson's motion for new trial, finding no error in the admission of the DNA evidence and finding that trial counsel was neither deficient nor ineffective. This appeal followed.

1. Jefferson contends that the trial court erred by admitting the inconclusive results of the victim's rectal swab, including evidence of an inconclusive value of male DNA, because it was irrelevant and inadmissible.

Here, although defense counsel did not affirmatively waive any objection to the GBI analyst's testimony as a whole, she did affirmatively waive any objection to the qualification of the analyst as an expert and to the lab report regarding the DNA analysis. Because the analyst's testimony regarding the DNA testing was relevant to understanding the lab report, which was admitted without objection,[10] this enumeration provides no basis for reversal.

2. Jefferson also alleges that trial counsel was ineffective by failing to obtain a DNA expert; by failing to object to evidence, testimony, and argument regarding

---

[10] See OCGA § 24-4-401 (defining relevant evidence as that "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").

8

the inconclusive DNA test results; and by failing to introduce evidence that the skin cell fraction from the victim's rectal swab was conclusively negative for the presence of male DNA. Again, we find no basis for reversal.

> To establish that his trial counsel was constitutionally ineffective, [Jefferson] must prove both deficient performance by counsel and resulting prejudice. To show that his lawyer's performance was deficient, [Jefferson] must demonstrate that the lawyer performed his duties in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms. This is no easy showing, as the law recognizes a strong presumption that counsel performed reasonably, and [Jefferson] bears the burden of overcoming this presumption. To carry this burden, he must show that no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not. In particular, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course.
>
> Even when a defendant has proved that his counsel's performance was deficient in this constitutional sense, he also must prove prejudice by showing a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding. Rather, [Jefferson] must demonstrate a reasonable probability of a different result, which, the United States

Supreme Court has explained, is a probability sufficient to undermine confidence in the outcome.

The reviewing court need not address both components of the inquiry if the defendant makes an insufficient showing on one. In all, the burden of proving a denial of effective assistance of counsel is a heavy one. . . ."[11]

"'We will not reverse on the basis of ineffective assistance of counsel unless trial counsel's conduct so undermined the proper functioning of the adversarial process that the trial could not reliably have produced a just result.'"[12]

Pretermitting whether trial counsel was deficient with regard to objecting to and countering the DNA evidence,[13] the evidence against Jefferson was strong, including: the victim's immediate outcry; the details in and the consistency of her multiple statements and subsequent trial testimony; evidence found in Jefferson's

---

[11] (Citations and punctuation omitted.) *Brown v. State*, 302 Ga. 454, 457-458 (2) (807 SE2d 369) (2017), quoting *Strickland v. Washington*, 466 U. S. 668, 687, 697 (104 SCt 2052, 80 LE2d 674) (1984). See also *Carcamo v. State*, 348 Ga. App. 383, 392 (2) (823 SE2d 68) (2019).

[12] (Punctuation omitted.) *Ward v. State*, 274 Ga. App. 511, 517 (4) (b) (618 SE2d 154) (2005).

[13] See, e.g., *Commonwealth v. Hawk*, 551 Pa. 71, 77-78 (709 A.2d 373) (Pa. 1998) (holding that negative DNA test results, though inconclusive, were relevant and admissible, and "[i]t was for the jury to determine its weight and persuasiveness").

bedroom — the victim's blanket and Vaseline — consistent with the victim's testimony; Jefferson's written apology to his girlfriend from jail; and B. M.'s testimony that Jefferson assaulted her when she was a child sleeping in his home. In light of this evidence and given that the GBI analyst clearly conceded on both direct and cross-examination that the male DNA found on the victim's rectal swabs was of a level that could reflect a false positive, Jefferson "failed to show a reasonable probability that the result of his trial would have been different but for the alleged deficiencies."[14] And any improper prejudice to Jefferson was minimized by the fact that Jefferson's trial counsel was able to highlight testimony by the State's DNA expert that the inconclusive threshold was created to account for the fact that in known female samples, there are occasions when a value for male DNA is returned even though there should be none. Thus, the jury was able to properly weigh the DNA

---

[14] *Carcamo*, 348 Ga. App. at 393 (2) (c), citing *Brannon v. State*, 298 Ga. 601, 611 (7) (783 SE2d 642) (2016). See also *Green v. State*, 359 Ga. App. 845, 855 (5) (a) (860 SE2d 140) (2021).

evidence with knowledge of what it could mean and what it could not. As noted above, the burden under *Strickland* is a heavy one, and Jefferson has not met it here.[15]

*Judgment affirmed. Gobeil, J., and Senior Appellate Judge Herbert E. Phipps concur.*

---

[15] See *Brown*, 302 Ga. at 457 (2) ("It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding."), quoting *Harrington v. Richter*, 562 U. S. 86, 104 (131 SCt 770, 178 LE2d 624) (2011).