## A10A2326. NEAL v. THE STATE.
(707 SE2d 503)

ADAMS, Judge.

Willie Henry Neal was convicted of rape and sentenced to life in prison without parole. He appeals the judgment and the denial of his

amended motions for new trial. He contends that the evidence was insufficient to support the verdict, that the court erred by denying his motion to suppress, that the trial was flawed by prosecutorial misconduct, and that he received ineffective assistance of counsel. We affirm.

1. At trial, the victim testified that late on the night of September 5, 2003, as she was waiting for her mother to pick her up after a high school football game, a man she did not know approached her, asked her a question, walked away for a moment but returned. The man then grabbed her, tried to pick her up, and dragged her to some bushes as she attempted to fight with him to get away. The man threatened her with a knife, forced her pants and underwear off, choked her, and had intercourse with her over her screams and protests. Afterward he told her not to tell her parents, that he knew where she lived, and that if she told anybody, he was going to kill her. He even correctly told her the area where she lived and what type of car her mother drove. He then rode away on a bicycle. The victim's mother did not arrive, so the victim began to walk home when the man returned on the bicycle and again threatened her not to tell.

There was blood on her jeans when she got home. She told her mother what had happened, and they went to the hospital for an examination and later to the police station to make a report. A sexual assault kit was prepared at the hospital. There was medical evidence of penetration. The investigation of the incident took some time, and, about two years later, the victim selected Neal from a photo lineup. At some point the rape kit was submitted for comparison with a cheek swab taken from Neal, and the substances found on the victim revealed semen and DNA from Neal. At trial, the victim identified Neal as the rapist.

The evidence was sufficient to support the verdict. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Neal contends the trial court erred in denying his motion for new trial based on his assertion of several incidents of prosecutorial misconduct.

(a) He first contends the prosecutor required him to wear a "shock belt" during trial. But he has not cited any evidence to support this assertion nor that he objected at trial. Unsupported assertions of error leave us nothing to review. See *Jefferson v. State*, 279 Ga. App. 97, 98 (630 SE2d 528) (2006). Moreover, at a hearing on Neal's motions for new trial, trial counsel testified that he did not remember Neal complaining about a shock belt or even remember that Neal had to wear one. At the hearing on his motions for new trial, Neal testified that he wore a shock belt. But Neal essentially admitted that the belt was under his clothes and not visible. Finally, Neal has not cited any evidence to show that wearing any such belt

was attributable to the prosecution nor explained how the incident amounts to reversible error.

(b) Neal contends the prosecutor engaged in misconduct during opening argument because, even though the victim's mother never testified, the prosecutor stated the evidence would show that the victim's mother had fallen asleep and lost track of time and that when the victim came to the door, the mother knew something was wrong. We find no possible harm. In the end, the victim testified to most of the same information, and Neal has not explained how he was prejudiced as a result. "It is axiomatic that harm as well as error must be shown to authorize a reversal by this court." (Punctuation and footnote omitted.) *Albarran v. State*, 249 Ga. App. 331, 334 (4) (548 SE2d 440) (2001). See also *Kersey v. Williamson*, 284 Ga. 660, 663 (3) (670 SE2d 405) (2008).

(c) Neal contends the prosecutor violated the "golden rule" during closing argument and that he made several other improper statements. But "[i]n the appeal of a non-capital case in either appellate court, the defendant's failure to object to the State's closing argument waives his right to rely on the alleged impropriety of that argument as a basis for reversal." *Mullins v. State*, 270 Ga. 450, 451 (2) (511 SE2d 165) (1999).

3. Neal contends the trial court erred by denying his oral motion to suppress introduction of the photo lineup from which the victim identified Neal. When the prosecutor began to question Detective Brad Mules about the photo lineup, Neal objected to its introduction on the ground that it showed him in a prison uniform. The prosecutor explained that the photo lineup was what the victim had been shown. The court reviewed the exhibit and said, "I don't think it's abundantly apparent that what he has on is what you have indicated. I think I'll overrule the objection."

On appeal, Neal first contends the photo lineup should have been excluded on the ground that it was so impermissibly suggestive as to give rise to a substantial likelihood of misidentification. But counsel did not raise this ground at trial, and therefore it is waived. *Wallace v. State*, 302 Ga. App. 410, 411 (1) (691 SE2d 557) (2010). Neal contends the photo lineup brought his character into evidence. But we have reviewed the exhibit and agree with the trial judge that it is not apparent that Neal is wearing prison clothing. We see no harm.

4. Finally, Neal contends his counsel was ineffective in five ways. To show ineffective assistance, a criminal defendant must show both that his counsel's performance was deficient and but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). And, "mere

'(s)peculation is insufficient to satisfy the prejudice prong of *Strickland*.'" (Footnote omitted.) *Peterson v. State*, 284 Ga. 275, 276 (663 SE2d 164) (2008).

(a) Neal contends trial counsel failed to thoroughly investigate the facts of the case and to interview all potential witnesses. But trial counsel testified that the victim and her mother refused to speak to him, and Neal has not identified any other witnesses or their potential testimony that should have been presented. Without this information, he can show no harm.

(b) Neal contends trial counsel failed to adequately advise him both before and during trial. He adds that he never authorized counsel to use consent as a defense and that he wanted to testify but was not allowed by counsel. But again, even assuming he is correct on these assertions, Neal has not presented any information to show a reasonable probability that the outcome of the trial would have been different had counsel acted otherwise. Furthermore, by Neal's own admission, he met with trial counsel "just about as much as anybody would want to meet with their attorney," or perhaps ten or twelve times prior to trial. And trial counsel testified that he went over the evidence with Neal numerous times, discussed strategy, and that Neal relied on his advice and decided not to testify.

(c) Neal contends counsel failed to adequately cross-examine the State's witnesses. He notes that counsel only cross-examined the victim and two other witnesses but failed to cross-examine three other witnesses — the first responding officer, the forensic scientist, and the Georgia Bureau of Investigation (GBI) crime lab biologist. He argues that, as a result, counsel failed to develop the only defense that he claimed to be pursuing — that the victim had consented.

"The decisions on which witnesses to call, whether and how to conduct cross-examinations, what jurors to accept or strike, what trial motions should be made, and all other strategies and tactical decisions are the exclusive province of the lawyer after consultation with his client." (Citation and punctuation omitted.) *Stuart v. State*, 274 Ga. App. 120, 122 (616 SE2d 855) (2005).

Moreover, Neal simply has no information regarding what any asserted cross-examination would have revealed. His entire argument is based on pure speculation that something would have been discovered to help his case. He therefore has not shown a reasonable probability that the outcome of the trial would have been different had counsel engaged in further cross-examination.

(d) Neal contends that counsel failed to properly object to admission of the sexual assault kit and that counsel should have objected to the chain of custody of the kit.

Nurse Denise Atkinson, who performed the sexual assault examination, testified that she prepared the sexual assault kit by

collecting vaginal swabs, fingernail scrapings, a blood sample, the victim's clothing, and other material found on the victim or her clothing. She testified that she recognized Exhibit 9 as the kit she used in this case. Lieutenant Bobby Brantley of the Warner Robins Police Department testified that Atkinson turned the kit over to him, and he logged it into evidence. Melissa Murphy, a DNA analyst for Bode Technology group located in Springfield, Virginia, testified that her employer has a contract with the Georgia crime lab to process DNA samples. Under that agreement, she received vaginal/cervical swabs and a blood stain card regarding the victim. She determined that there were two different DNA profiles in the sample, one from a man and one from the victim. She returned that information to the GBI crime lab. Michael Gehring, a forensic biologist with the GBI crime lab testified that he received a swab of substance obtained from Neal's cheek and he compared it with the sample returned from Bode Technology in order to determine whether there was a match. He concluded that the DNA profile of the two samples matched.

Neal points out that no testimony was given about where the kit was stored, how the kit got to Bode Technology, who handled the kit at certain times, and how it ended up at trial. He contends that therefore, the proper chain of custody was not established, and that trial counsel provided ineffective assistance by failing to object on that ground.

But, "[c]ounsel's decisions on which motions and objections to make are matters of trial strategy and tactics that are within the lawyer's exclusive province and do not amount to ineffective assistance of counsel." *Howard v. State*, 252 Ga. App. 465, 468 (1) (556 SE2d 536) (2001). Moreover, in order to prove chain of custody, "[t]he State is not required to foreclose every possibility of tampering; it need only show reasonable assurance of the identity of the evidence." (Citations, punctuation and footnotes omitted.) *Maldonado v. State*, 268 Ga. App. 691-692 (1) (603 SE2d 58) (2004). When "no showing of tampering has been made and only a bare speculation of possible tampering exists, the chain of custody is not broken and the evidence is admissible, with any doubts going to its weight." *Winter v. State*, 252 Ga. App. 790, 791 (2) (557 SE2d 436) (2001). And the simple fact "that one of the persons in control of a fungible substance does not testify at trial does not, without more, make the substance or testimony relating to it inadmissible." (Citations and punctuation omitted.) *Gassett v. State*, 289 Ga. App. 792, 795 (3) (658 SE2d 366) (2008). Accordingly, Neal has not shown that the outcome of the trial would have been different if trial counsel had objected. See, e.g., *Thomas v. State*, 288 Ga. App. 602, 606 (2) (654 SE2d 682) (2007) (not error to admit DNA results over chain of custody objection even though sample had been sent to a

private lab in New Orleans for testing and no witness testified about custody of the sample at that lab). See also *Johnson v. State*, 271 Ga. 375, 382 (13) (519 SE2d 221) (1999).

(e) Finally, Neal contends trial counsel failed to object to the second trial on the ground of double jeopardy and improperly allowed his first scheduled trial to be canceled in his absence.

Neal's case was called for trial on Monday, June 19, 2006, and a jury was selected and seated by about 5:30 p.m., but there is no indication in the transcript that the jury was sworn. At that point, Neal's trial counsel mentioned that he needed to get some medicine from home and that he had sent someone earlier to get it. After a brief discussion between the attorneys and the judge, it was agreed that the proceedings would continue in the morning, the selected jurors were released for the evening, and the unselected jurors were released for good. The transcript shows that the next morning the judge announced that defense counsel had "some pretty serious health problems" because he missed taking some medicine. The court announced that the jurors were going to be dismissed as a panel and that the case would be tried in July, which it was, with a new jury. During the announcement, the judge stated that "it's technically not a mistrial, because we haven't begun. . . ." The transcript does not indicate who was present on that morning.

At a hearing on his motion for new trial, Neal testified that the first jury was sworn on the first day. He testified that he was not taken to the court on the second day and that later, he learned that there would be no trial that day. No one asked his permission or consent to terminate the trial.

Neal contends counsel should have objected to the second trial on the ground of double jeopardy. But without the jury having been sworn in, jeopardy did not attach to the first trial. See *Ogletree v. State*, 300 Ga. App. 365, 366 (685 SE2d 351) (2009). Although Neal contends the jury was sworn, the transcript does not support his assertion. The court was authorized to conclude that the jury was never sworn and that jeopardy did not attach. Therefore we find no ineffective assistance with regard to any claim of double jeopardy.

Neal contends counsel failed to protect his rights by allowing his first trial to be terminated in his absence. See *Vaughn v. State*, 281 Ga. App. 475, 477 (636 SE2d 163) (2006) ("[A] criminal defendant must be present when the court takes any action materially affecting his case."). But Neal has not proved an ineffective assistance claim on this point.

> [W]here, as here, a defendant is not challenging his convic-
> tion directly based on an alleged violation of the right to be
> present, but instead raises the issue only indirectly under

the aegis of an ineffective assistance of counsel claim, he or she must satisfy both prongs of the *Strickland* test for constitutional ineffective assistance of counsel claims.

*Peterson*, 284 Ga. at 280. Neal simply has not shown that the outcome of his trial would have been different if he had been present that Tuesday morning to hear that his counsel was too ill to proceed. Accordingly, Neal's ineffective assistance claim fails.

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED FEBRUARY 22, 2011 —
RECONSIDERATION DENIED MARCH 18, 2011.

*Jeffrey L. Grube*, for appellant.
*Kelly R. Burke, District Attorney, Jason E. Ashford, Venita S. McCoy, Assistant District Attorneys*, for appellee.