**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 14, 2022**

# In the Court of Appeals of Georgia

A21A1219. ULBRICH v. THE STATE.
A21A1220. JOHNSON v. THE STATE.

MARKLE, Judge.

A jury convicted Peter Ulbrich and Nathaniel Johnson of multiple counts of violations of the Georgia Racketeer Influenced and Corrupt Organizations Act (RICO), theft by deception, and practicing medicine without a license. See OCGA §§ 16-14-4; 16-8-3; 43-34-22. The defendants now appeal, both contending that OCGA § 43-34-22 is unconstitutionally vague, and the trial court committed plain error in crafting its jury instruction regarding the practice of medicine without a license. In Case No. A21A1219, Ulbrich also challenges the sufficiency of the evidence, and argues that the trial court abused its discretion by refusing to grant him first offender status. In Case No. A21A1220, Johnson contends the trial court erred

by (1) violating the rule in *Bruton v. United States*[1] by admitting statements made by Ulbrich, who did not testify; (2) refusing to admit evidence of impeachment; (3) refusing to charge the jury on good faith reliance on the advice of counsel and good faith, in general; and (4) denying a mistrial based on the prosecutor's allegedly prejudicial remarks in opening statements. For the following reasons, we affirm.

Viewed in the light most favorable to the verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), the record shows that Johnson had been a licensed medical doctor and owned a cosmetic surgery practice, Hello Beautiful ("the practice"). Due to events unrelated to the present case, Johnson surrendered his license to practice medicine in 2014, prohibiting him from practicing medicine in this state.[2] Johnson did not close the practice as a result of the loss of his license, but instead purported to act as an administrator and supervisor at the practice. Johnson hired four licensed physicians, including Ulbrich, to perform cosmetic surgeries at the practice.

---

[1] 391 U. S. 123 (88 SCt 1620, 20 LE2d 476) (1968).

[2] In the earlier case, Johnson pled guilty to Medicaid fraud and the unlawful practice of medicine.

After a patient complained to the Georgia Composite Medical Board, law enforcement began an investigation into the practice. Among other things, the lead investigator found that the practice's website and other social media repeatedly referred to Johnson as a doctor, attaching the "M. D." suffix to his name. Authorities executed two search warrants at the practice. During the first search, the lead investigator observed that Johnson's diplomas, honors and awards, and license certificates were hung in his office. However, these documents were removed at the time of the second search. Thereafter, Ulbrich approached the lead investigator to discuss the case, at which time he admitted to her that he had removed Johnson's certifications because he was concerned they could be misleading to patients. Ulbrich also told the lead investigator that he had not hung his diplomas and certifications there because it was not his main office.

Following the investigation, Johnson and Ulbrich were charged with multiple counts of RICO Act violations; theft by deception, individually and as co-conspirators; and practicing medicine without a license, individually, as co-conspirators, and as parties to the crime.[3] At the ensuing trial, the medical board's

---

[3] Another party was named in the indictment and was tried with the defendants, but did not join in this appeal.

3

legal officer testified that a physician who surrendered his license could no longer display his professional certifications; use the titles, "doctor" or "M. D."; consult with patients or advise other physicians as to medical procedures; or otherwise hold themselves out to the public as doctor in any respect. The State also proffered testimony from several former patients that had undergone cosmetic surgery procedures at the practice. Generally, these patients testified that they were led to believe that Johnson was a licensed physician because they observed his diplomas and other certifications hanging in the office; he and other staff, including Ulbrich, called him "doctor"; the patients were not corrected when they called Johnson "doctor"; Johnson consulted with the patients regarding their surgeries and drew markings on their bodies prior to surgery; he was present during their surgeries and was sometimes observed performing or directing the procedure; and he conducted their follow-up visits. The patients generally testified that Ulbrich's name appeared on their medication prescriptions, but they either never met him or did not meet him until the day of their procedures. As a whole, the patients detailed the fees they had paid to the practice for the procedures, and testified that they would not have undergone the procedures had they known that Johnson was not a licensed practitioner.

4

Johnson testified at trial, and generally denied that he and Ulbrich had conspired to deceive the patients as far as his licensure. He further testified that, when he lost his license, he consulted with the medical board and an attorney to determine the extent to which he could legally remain at his practice. Johnson stated that, based on their reading of the relevant statute, he understood that he could continue owning the practice and could carry out certain customary medical acts if they were delegated to him by a licensed doctor, such as Ulbrich. In addition, Johnson drafted a consent form that purported to notify patients that one of the licensed practitioners was actually their doctor. However, this form does not expressly state that Johnson was not a licensed medical doctor, and some of the patients testified that they did not read it carefully when they were filling out the paperwork prior to their procedures.

As to both defendants, the jury returned guilty verdicts on the RICO violation counts, and on several counts of theft by deception and practicing medicine without a license. These appeals followed.[4] We address the merits of the claims the defendants raise jointly before considering their individual claims on appeal.

---

[4] Ulbrich filed a motion for new trial, which the trial court denied. Johnson withdrew his motion for new trial, and directly appealed his convictions, pursuant to OCGA § 5-6-36 (a).

1. Both defendants contend that OCGA § 43-34-22 is unconstitutionally vague. Their enumerations of error provide nothing for us to review.

Here, Johnson moved the trial court to declare OCGA § 43-34-22 unconstitutionally vague.[5] Following a hearing, the trial court denied the motion as untimely, but also denied it on the merits in the alternative. The defendants initially filed these appeals in the Supreme Court of Georgia based on the trial court's constitutionality ruling. However, the Supreme Court transferred these appeals to this Court, finding that it lacked jurisdiction over the constitutional question because the defendants failed to challenge the trial court's timeliness ruling, only enumerating as error the ruling on the merits. "The transfer of [these] appeal[s] by the Supreme Court to this Court is a final determination that no constitutional question was in fact properly raised." (Citation and punctuation omitted.) *Woods v. State*, 361 Ga. App. 259, 264 (2) (863 SE2d 738) (2021); see also *Vaughn v. State*, 352 Ga. App. 32, 37 (2) (833 SE2d 723) (2019) ("[T]he Supreme Court's determination in its transfer order is final and binding.") (citation and punctuation omitted). Thus, we are bound

---

[5] Ulbrich contends that he joined in the motion, which the State disputes. In light of the above ruling, this dispute is immaterial.

by the Supreme Court's determination that the defendants failed to properly raise this constitutional challenge, and there is nothing for us to review.

2. Both defendants also argue that the trial court committed plain error in crafting its jury charge on practicing medicine without a license. See OCGA § 43-34-22.[6] Specifically, the defendants object to the trial court's instruction: "I charge you that engaging in unlicensed practice includes delegation by a physician a professional responsibility to a person who is not authorized to provide such services." They have not met their burden to show plain error.

---

[6] OCGA § 43-34-22 (a) provides:

If any person shall hold himself or herself out to the public as being engaged in the diagnosis or treatment of disease or injuries of human beings, or shall suggest, recommend, or prescribe any form of treatment for the palliation, relief, or cure of any physical or mental ailment of any person, with the intention of receiving therefor, either directly or indirectly, any fee, gift, or compensation whatsoever, or shall maintain an office for the reception, examination, or treatment of diseased or injured human beings, or shall attach the title "M.D.," . . . either alone or in connection with other words, or any other word or abbreviation to his or her name indicative that he or she is engaged in the treatment of diseased, defective, or injured human beings, and shall not in any of these cases then possess a valid license to practice medicine under the laws of this state, he or she shall be deemed to be practicing medicine without complying with this article and shall be deemed in violation of this article.

7

Because the defendants did not object to the charge as given, we review for plain error only. *Williams v. State*, 306 Ga. 717, 720 (2) (832 SE2d 805) (2019); OCGA § 17-8-58 (b).

> When reviewing a jury instruction for plain error that has not been affirmatively waived,[7] the proper inquiry is whether the instruction was erroneous, whether it was obviously so, and whether it likely affected the outcome of the proceedings. If an appellant demonstrates that the trial court's failure to give an instruction constitutes such error, an appellate court may exercise its discretion to correct the error only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

(Citations and punctuation omitted.) *Williams*, 306 Ga. at 720 (2). The defendants bear the burden to establish plain error, and the task "is difficult, as it should be." (Citations omitted.) *State v. Crist*, 341 Ga. App. 411, 415 (801 SE2d 545) (2017). "It is, of course, well established that the charge to the jury is to be taken as a whole and not out of context when making determinations as to its correctness." (Citations and punctuation omitted.) Id.

The defendants contend that this charge effectively nullified their defense that Ulbrich was permitted to delegate certain medical tasks to Johnson under their

---

[7] The State concedes that the defendants did not affirmatively waive this issue.

8

reading of OCGA § 43-34-22. However, immediately prior to the allegedly improper charge, the trial court instructed the jury on the law as set forth in OCGA § 43-34-22 (b) (8):

> I charge you that nothing in this chapter shall be construed to prohibit the delegation by a physician to a qualified person other than a physician assistant of any acts, duties or functions which are otherwise permitted by law or established by custom.

Reading the charge in its entirety, as we must, the instructions as given were not erroneous. The charge they find objectionable is an almost exact rendering of language found in the medical board's rules and regulations.[8] Ga. Comp. R. & Regs. 360-3-.05. Thus, both of these charges are apt statements of the law in Georgia. See *Thompson v. Princell*, 304 Ga. App. 256, 257-260 (a) (696 SE2d 91) (2010) (considering Georgia Administrative Code regulation in determining that trial court did not err in failing to charge the jury on general anesthesia in dental malpractice case). And it was left to the jury to decide whether Johnson was "not authorized to provide such services" (and thus the delegation of duties would be unlawful) or

---

[8] Ga. Comp. R. & Regs. 360-3-.05 (1) provides: "Engaging in unlicensed practice includes delegation by a physician of professional responsibilities to a person who is not authorized to provide such services."

whether he was "a qualified person" (and thus the delegation of duties were lawful). These characterizations are not incompatible, nor confusing. Thus, when viewed in context, the trial court's instruction was neither misleading or dismissive of the defendants' defense. See *Williams*, 306 Ga. at 720 (2); *Shields v. State*, 285 Ga. 372, 376 (3) (677 SE2d 100) (2009).

Moreover, the defendants fail to show how they were harmed by this charge in light of the abundant evidence, as summarized above, that Johnson both held himself out to the public as a doctor and was performing medical procedures — and was thus engaged in the unlicensed practice of medicine — and that the defendants were acting in concert. See *Paschal v. State*, 335 Ga. App. 411, 415 (2) (780 SE2d 681) (2015); see also *Shields*, 285 Ga. at 375 (2). As such, this claim of error is without merit.

We now turn to the individual defendants' arguments on appeal.

*Case No. A21A1219*

3. Ulbrich challenges the sufficiency of the evidence with regard to the counts for theft by deception and conspiring to practice medicine without a license. He further contends that the RICO charges must fail because they are dependent on the

10

theft counts. Our thorough review of the record, however, reveals sufficient evidence to support the verdict.

> On appellate review of a criminal conviction, we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or judge the credibility of witnesses, but determine only if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the offenses charged beyond a reasonable doubt.

(Citation omitted.) *Davis v. State*, 357 Ga. App. 720 (1) (848 SE2d 173) (2020).

(a) *Theft by deception*.

Ulbrich argues that the patients' testimony that he either referred to Johnson by the title, "doctor," or failed to correct the patients when they referred to Johnson as "doctor," was insufficient to support his convictions for theft by deception. He further argues that the State failed to prove an element of the offense, i. e., that he obtained the property of another. We disagree.

Pursuant to OCGA § 16-8-3 (a), "[a] person commits the offense of theft by deception when he obtains property by any deceitful means or artful practice with the intention of depriving the owner of the property." As is relevant to the facts of this case,

11

[a] person deceives if he intentionally: (1) Creates or confirms another's impression of an existing fact or past event which is false and which the accused knows or believes to be false; [or] (2) Fails to correct a false impression of an existing fact or past event which he has previously created or confirmed[.]

We note that the element regarding a "failure to correct" requires "an affirmative obligation to act" on the part of the accused. Robert E. Cleary, Jr., *Kurtz Criminal Offenses and Defenses in Ga.*, T14 (II) (E) (2) (a) (2021 ed.).

Here, there was sufficient evidence to support Ulbrich's theft by deception convictions. The trial record shows that Ulbrich knew that Johnson did not have a medical license. And there is ample testimony from multiple patients that Ulbrich confirmed the false impression that Johnson was a licensed doctor by calling Johnson "doctor" or that he failed to correct the false impression when patients and staff referred to Johnson as "doctor" in Ulbrich's presence. See OCGA § 16-8-3 (a), (b) (1), (2). Additionally, Ulbrich remained silent when Johnson told patients that Ulbrich would be present to either assist or train on the procedures being performed by Johnson.

Ulbrich contends that it was not criminal to refer to Johnson as "doctor" because, technically, Johnson was a doctor as he graduated from medical school. This

argument is both disingenuous and belied by the patients' testimony that they would not have submitted to the surgeries had they known Johnson was not a *licensed* medical doctor, as well as by the testimony of the medical board's legal officer rejecting this theory.

Ulbrich further contends that the State failed to prove the essential element that he obtained property as a result of the deception because he did not personally receive payments from the patients and he was not an owner of the practice. See OCGA § 16-8-3 (a). He relies on *Robinson v. State*, 198 Ga. App. 431, (401 SE2d 621) (1991), but that case is easily distinguishable. There, we found that the evidence was insufficient to satisfy the "obtaining property" element of the offense where there was no showing that the "appellant personally obtained or used the funds or that he received *any benefit* from any of the funds invested." (Emphasis supplied.) Id. at 433. Here, the record showed that, even though Ulbrich did not possess an interest in the practice, Johnson paid him for his work at the practice. Ulbrich thus directly benefitted from the funds obtained by the deception. See *InterAgency, Inc. v. Danco Financial Corp.*, 203 Ga. App. 418, 425 (2) (a) (417 SE2d 46) (1992) (physical precedent only) (in civil RICO case premised on theft by deception, evidence was sufficient to show defendants profited from receipt of funds that was meant to be placed in a corporate

13

trust account due to their "close identity of interests."). Accordingly, the evidence was sufficient to support Ulbrich's convictions for theft by deception.

(b) *RICO Act violations*.

Ulbrich also argues that his convictions under the Georgia RICO Act fail because the evidence was insufficient to support the predicate theft by deception convictions, and the unlawful practice of medicine does not qualify as a racketeering activity. See *Mosley v. State*, 253 Ga. App. 710, 711-712 (1) (560 SE2d 305) (2002) ("To prove a RICO violation, the state must show that the defendant committed two or more predicate criminal acts of the type included in the RICO statute as part of an enterprise engaging in a pattern of racketeering activity."); OCGA § 16-14-4 (a), (b). In light of our holding above that there was sufficient evidence to support the theft convictions, this argument is without merit.

(c) *Conspiracy and party to Johnson's unlicensed practice of medicine.*

Ulbrich next argues that the evidence was insufficient to support his convictions for conspiring and being a party to Johnson's unlicensed practice of medicine. We disagree.

> Criminal liability is imposed not only where a defendant has
> directly committed crimes, but also where a defendant is a party to the

crimes, meaning where a defendant intentionally causes another person to commit crimes, intentionally aids in the commission of crimes, or intentionally advises, encourages, hires, counsels, or procures another to commit crimes. Conviction as a party to a crime requires proof that the defendant shared a common criminal intent with the direct perpetrators of the crimes. A jury may infer a common criminal intent from the defendant's presence, companionship, and conduct with other perpetrators before, during, and after the crimes.

(Citations omitted.) *Fitts v. State*, 312 Ga. 134, 142 (3) (859 SE2d 79) (2021); OCGA § 16-2-20.

As alleged in the indictment, Ulbrich was accused of aiding Johnson in the practice of medicine without a license by holding Johnson out to the public as authorized to treat and diagnose patients; maintaining an office for Johnson to receive, examine and treat patients; attaching titles and suffixes, such as "doctor" or "M.D.," to Johnson's name that would lead others to believe Johnson was a licensed medical doctor; and assisting Johnson in suggesting, recommending, and prescribing treatment to patients.

Our thorough review of the record reveals that there was sufficient evidence of a common criminal intent to support Ulbrich's convictions on these grounds. For example, several former patients testified that they believed Johnson to be a doctor

15

because Ulbrich referred to him as such in their presence, or did not correct their use of the title when addressing Johnson. Additionally, Ulbrich allowed Johnson to refer to him as an assistant or trainee prior to performing the procedures with Johnson, despite his knowledge that Johnson had lost his license. Ulbrich either prescribed medications, or permitted such prescriptions to be written in his name, for patients he had not seen. Ulbrich further assisted in the operations of the office by allowing himself to be identified as the patients' doctor on intake forms, regardless of the fact that he had not diagnosed their conditions or recommended their courses of treatment, and he was aware that Johnson was performing medical procedures without a license.

Moreover, although Johnson testified that he did not conspire with Ulbrich, the jury was entitled to disbelieve his statement and construe it, along with the other evidence of record, as substantive evidence of guilt. Cf. *Daughtie v. State*, 297 Ga. 261, 263 (2) (773 SE2d 263) (2015). As such, there was adequate evidence to support Ulbrich's conviction as a party to Johnson's crime of practicing medicine without a license.

4. Ulbrich next argues that the trial court abused its discretion by refusing his request for first offender treatment. We discern no error.

OCGA § 42-8-60 (a) (1) provides that "[w]hen a defendant has not been previously convicted of a felony, the court may, upon a guilty verdict . . . defer further proceedings and . . . [p]lace the defendant on probation[.]" As we have explained,

> [r]efusal to consider first offender treatment as part of a sentencing formula or policy by automatic denial constitutes an abuse of discretion and constitutes reversible error. However, there must be a clear statement in the record that constitutes either a general refusal to consider such treatment or an erroneous expression of belief that the law does not permit the exercise of such discretion.

(Citations omitted.) *Powell v. State*, 271 Ga. App. 550, 551-552 (610 SE2d 178) (2005).

Here, Ulbrich filed a motion for first offender status, to which he appended a private sentencing report that recommended a probated sentence, and he was able to argue this issue at the sentencing hearing. The State opposed his request, and the trial court denied first offender treatment, stating:

> I'm aware that the private presentence report as well as the probation office presentence report recommended probation. They were not at the trial, I was. I will not undertake to do what I think would impeach the jury's verdict. That is my decision.

17

Based on these statements, Ulbrich contends that the trial court improperly applied a policy of automatic denials where a jury returned a guilty verdict, or did so as a punitive measure for his refusal to take a plea.[9]

In support of his position, he relies on *Wnek v. State*, 262 Ga. App. 733 (586 SE2d 428) (2003). But, there, the trial court clearly indicated on the record that it *did* have an automatic denial policy, declaring, "*I never grant First Offender on a - when somebody's gone to trial and been convicted by a jury. I never grant First Offender.*" (Emphasis in original.) Id. at 734. The trial court's statement, here, is a far cry from this unflinching approach. Most notably, the trial court referenced only the subject case when it explained that the evidence at *this* trial weighed on its ultimate sentencing determination. As such, Ulbrich cannot show that the trial court employed a blanket denial of post-verdict requests for first offender treatment.

Even if the trial court's statement were to be construed as, at best, ambiguous,

---

[9] To the extent Ulbrich contends that the trial court failed to adequately consider his first offender request, the record shows otherwise. The trial court expressly stated that it reviewed the presentencing reports, and took a recess prior to issuing the sentence in order to review other documents. Additionally, the trial court heard argument on the issue. Thus, Ulbrich fails to show that the trial court's consideration of this issue was deficient.

[t]here is a presumption that a trial court has regularly and correctly conducted the proceedings. Absent *clear*, i.e., unambiguous, statements in the record showing (1) an explicit request for First Offender Act treatment at the time of sentencing and (2) a failure to exercise discretion as evidenced by a misunderstanding of the law or a general policy against First Offender Act treatment, we will affirm the sentence as pronounced by the trial court.

(Emphasis in original.) *Powell*, 271 Ga. App. at 552; see also *Garr v. State*, 347 Ga. App. 555, 559-560 (5) (820 SE2d 193) (2018). Here, nothing in the record shows the trial court misunderstood the applicable law or generally refused to consider first offender treatment under these circumstances. The trial court, therefore, did not abuse its discretion in sentencing Ulbrich.

*Case No. A21A1220*

5. Johnson argues that the trial court violated his Sixth Amendment right to confrontation by admitting Ulbrich's inculpatory statement to an investigator, when Ulbrich did not testify and was not available for cross-examination, and no limiting

19

instruction was given. We conclude that Johnson cannot show that he was harmed by the admission.[10]

> The Supreme Court of the United States held in *Bruton v. United States* that the admission of a powerfully incriminating extrajudicial statement of a co-defendant who does not testify can pose a substantial threat to a defendant's rights under the Confrontation Clause of the United States Constitution, and such a threat cannot be cured by a limiting instruction. But *Bruton* only excludes statements by a non-testifying co-defendant that directly inculpate the defendant, and is not violated if a co-defendant's statement does not incriminate the defendant on its face and only becomes incriminating when linked with other evidence introduced at trial.

(Citations, footnotes, and punctuation omitted.) *Shelton v. State*, 350 Ga. App. 774, 777 (1) (830 SE2d 335) (2019). As we have explained with regard to potential *Bruton* violations,

> [i]n some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the co-defendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error. Whether a violation of the Confrontation Clause is harmless

---

[10] To the extent Johnson contends that the trial court also violated OCGA § 24-3-52, this provision has been repealed and involves a confession by a joint offender, which is not at issue here.

20

depends on a host of factors, including the importance of the witness's testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

(Citations and punctuation omitted.) *Carcamo v. State*, 348 Ga. App. 383, 390 (1) (b) (823 SE2d 68) (2019).

During the trial, at which Ulbrich did not testify, Johnson requested a severance based on the following testimony of the State's investigator recounting Ulbrich's statements after he voluntarily approached her to ask about the investigation:

Q: Did you ask [Ulbrich] about his belief, Peter Ulbrich's belief, about Nathaniel Johnson's diplomas on the wall? . . .
A: He said he thought that the certificates on the wall could be deceiving to patients. He had advised Nathaniel —
Q: So he thought they were deceiving.
A: Yes. . . .
Q: Did he say that he took them off the wall?
A: He said he gathered them up.

Johnson contends that this line of questioning was inculpatory as far as his intention to deceive the practice's clients, and specifically undermined his testimony that he did not intend to deceive anyone by placing his certificates and honors on his

21

office wall.[11] However, this statement, standing alone, does not directly incriminate Johnson. Ulbrich did not state that Johnson set out to deceive patients, rather Ulbrich expressed an opinion that the diplomas and certificates *could* deceive clients as justification for Ulbrich's removing them after the criminal investigation into the practice had begun. See *Sutton v. State*, 295 Ga. 350, 353 (3) (759 SE2d 846) (2014) ("*Bruton* is not implicated where the statement does not facially incriminate appellant and only becomes incriminating when linked with other evidence introduced at trial.") (citation and punctuation omitted); *Shelton*, 350 Ga. App. at 777 (1); *Thomas v. State*, 268 Ga. 135, 137-138 (6) (485 SE2d 783) (1997) (co-defendant's custodial statement that defendant had purchased a gun did not directly inculpate defendant convicted of murder and aggravated assault).

Moreover, Johnson fails to show how he was prejudiced by the investigator's testimony in light of his own testimony that he knew he was barred from displaying his professional credentials to the public as a result of the suspension of his license.

---

[11] The State concedes that Ulbrich's statements were testimonial. See *Favors v. State*, 296 Ga. 842, 845 (2) (770 SE2d 855) (2015) ("*Bruton* thus applies only to out-of-court statements by non-testifying co-defendants that are testimonial in nature.") (punctuation omitted).

See *Hill v. State*, 351 Ga. App. 58, 67 (4) (830 SE2d 478) (2019) ("[A] *Bruton* violation may not be prejudicial when the complained-of statements are substantially similar to evidence properly admitted at trial.") (citation and punctuation omitted). Additionally, there was ample testimony from former patients that they believed Johnson to be a medical doctor because they observed his credentials at the practice; the staff at the practice referred to him as "doctor"; and these patients referred to Johnson in his presence as "doctor," without correction. Thus, even assuming arguendo that there was a *Bruton* violation, Ulbrich's out-of-court statements were harmless beyond a reasonable doubt by virtue of the overwhelming evidence of Johnson's deception. See id. (no reversible error under *Bruton* where evidence of guilt was overwhelming in light of defendant's own statements and other evidence); *Carcamo v. State*, 348 Ga. App. 383, 391 (1) (b) (823 SE2d 68) (2019) (*Bruton* violation, if any, was harmless, noting the State's case "was very strong."); compare *Meadows v. State*, 264 Ga. App. 160, 165 (5) (590 SE2d 173) (2003) (reversible error where the evidence was not overwhelming and the only evidence placing defendant at the scene of the crime was non-testifying co-defendant's improperly admitted statement).

6. Johnson next challenges the trial court's refusal to allow him to impeach Ulbrich's statement addressed in Division 5, above. Specifically, Johnson sought to introduce a letter from Ulbrich to the investigator in order to impeach Ulbrich's prior out-of-court statement regarding his concern that Johnson's displayed diplomas and certifications could deceive patients. Johnson contends that the trial court erred by refusing this request. This argument is meritless.

"We review a trial court's evidentiary rulings under an abuse of discretion standard of review." (Citation and punctuation omitted.) *Moreland v. State*, 356 Ga. App. 452, 454 (1) (847 SE2d 641) (2020).

OCGA § 24-6-621 provides that "[a] witness may be impeached by disproving the facts testified to by the witness." However, the proffered letter did not disprove Ulbrich's concerns regarding Johnson's certifications. It does not mention the certifications or Ulbrich's removal of them at all, but is merely an account of Johnson's tasks and level of involvement with patients at the practice. The letter does not contradict Ulbrich's earlier statement, nor can we discern how it attacks Ulbrich's credibility in any way; therefore, the trial court did not abuse its discretion in deeming it inadmissible for impeachment purposes. See *Hills v. State*, 306 Ga. 800, 805 (2) (b) (833 SE2d 515) (2019).

7. Johnson also argues that the trial court erred by refusing to charge the jury on good faith reliance upon advice of counsel or on good faith as a defense. We disagree.

Because Johnson did not object to the charge as given, we review for plain error only. *Williams*, 306 Ga. at 720 (2); OCGA § 17-8-58 (b).

Here, Johnson submitted two requests to charge seeking to establish a defense to the deception counts upon a showing of either good faith or good faith reliance on advice of counsel. The trial court refused to give these instructions to the jury. On appeal, Johnson cites only to federal and Minnesota law, pointing to no Georgia state authority that recognizes either a good faith or a good faith reliance on counsel defense to the charges here. Nor have we found any such authority.[12] As such, Johnson cannot show that the trial court erred, let alone plainly erred, by refusing to give these proposed charges. See *Williams*, 306 Ga. at 720 (2); *Hill v. State*, 310 Ga.

---

[12] In *Whitworth v. State*, 275 Ga. App. 790, 800 (3) (e) (622 SE2d 21) (2005), a case that did not involve plain error review, we expressly declined to reach the issue of whether an "advice of counsel" charge is proper in Georgia in light of the facts, there. We note that, in the context of a plea withdrawal, our law is contrary to what Johnson proposes. In such cases, we have explained that "[a] person cannot avoid the legal consequences of his acts even if based on good faith reliance on the advice of counsel." (Citation and punctuation omitted.) *Craig v. State*, 192 Ga. App. 148, 149 (384 SE2d 240) (1989).

25

180, 194 (12) (a) (850 SE2d 110) (2020) ("An error cannot be plain where there is no controlling authority on point.") (citation omitted).

To the extent that Johnson contends that the trial court was required to give these charges because they went to his sole defense of lack of intent, this contention is meritless. First, for this proposition, Johnson relies on an easily distinguishable case involving the trial court's refusal to charge the jury on the affirmative and well-recognized defense of mistake of fact. *Price v. State*, 289 Ga. 459, 459-462 (2) (712 SE2d 828) (2011).

Second, the trial court, here, gave the appropriate pattern charges for the State's burden to prove his guilt beyond a reasonable doubt, including its burden to prove intent as an essential element of the offenses. See *Carter v. State*, 224 Ga. App. 445, 448 (1) (481 SE2d 238) (1997) ("[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.") (citation omitted); see also *Russell v. State*, 309 Ga. 772, 783 (3) (a) (848 SE2d 404) (2020) ("In reviewing a challenge to the trial court's jury instructions, we view the charge as a whole to determine whether the jury was fully and fairly instructed on the law of the case.") (citations omitted). Considering the jury charge as a whole, the trial

26

court fully and fairly instructed the jury on the relevant law, and we discern no error. See *Russell*, 309 Ga. at 783 (3) (a); *Williams*, 306 Ga. at 720 (2).

8. Finally, Johnson argues that the trial court erred in refusing to declare a mistrial after the State, in its opening statement, remarked on the quantity of attorneys required for his defense. Johnson contends that this remark was an improper comment on his guilt. We conclude Johnson fails to show he was harmed by any such error.

"Whether to grant a mistrial is a matter within the discretion of the trial court, and that discretion will not be interfered with on appeal unless it is apparent that a mistrial is essential to the preservation of the right to a fair trial." (Citation and punctuation omitted.) *Brinson v. State*, 289 Ga. 551, 552 (2) (713 SE2d 862) (2011). Regarding the State's allegedly improper remarks in opening statement, our Supreme Court has explained that

> opening statements by the State should be confined to an outline of what the State expects admissible evidence will prove at trial, and that even if the opening statement departs from that outline, a conviction will not be reversed if the State acted in good faith and if the trial court instructed the jury that the State's opening statement is not evidence and has no probative value.

(Citation and punctuation omitted.) *Holton v. State*, 280 Ga. 843, 847 (5) (632 SE2d 90) (2006); see also *Frazier v. State*, 249 Ga. App. 463, 464 (2) (549 SE2d 133) (2001).

Here, the prosecutor concluded his opening statement as follows:

This case is about the deception and the conceit, the conceit that that man and the rules don't apply to him. He has three lawyers needed to defend him on that. Johnson's counsel immediately objected and the trial court instructed the prosecutor to "move on." Shortly thereafter, Johnson's lead counsel commenced his opening statement by introducing himself and his two co-counsel. Following opening statements, Johnson moved for a mistrial based on the above statement of the prosecutor. The trial court refused to declare a mistrial and also denied Johnson's request to strike the prosecutor's remark.

Pretermitting whether the prosecutor's remark was an improper comment on Johnson's guilt, "other than mere conjecture, [Johnson] has not shown how he was harmed by the incident." *Brinson*, 289 Ga. at 552 (2); see also *Neal v. State*, 308 Ga. App. 551, 553 (2) (b) (707 SE2d 503) (2011) ("It is axiomatic that harm as well as error must be shown to authorize a reversal by this court.") (citation omitted). The prosecutor made a single, isolated comment, after which Johnson's counsel immediately commenced his opening statement by introducing the three members of

28

the defense team, which the jurors could readily observe for themselves. Additionally, as set forth above, the evidence of Johnson's guilt was overwhelming.

Moreover, the trial court charged the jury on the State's burden of proof and that opening statements are not evidence, and we presume the jury followed the trial court's instructions. *Smith v. State*, 307 Ga. 263, 275-276 (3) (b) (834 SE2d 1) (2019) (defendant could not show he was prejudiced by counsel's alleged ineffective assistance for failing to object to prosecutor's remarks in opening statements where trial court instructed the jury on burden of proof and that opening statements are not evidence); see also *Frazier*, 249 Ga. App. at 464 (2). Nor has Johnson shown that the State made the purportedly errant remark in bad faith. See *Holton*, 280 Ga. at 847 (5). The prosecutor did not repeat its observation after the trial court instructed him to move on. Compare *Jones v. State*, 292 Ga. 656, 661-662 (2) (740 SE2d 590) (2013) (reversible error where trial court failed to give adequate curative instruction where prosecutor repeatedly attempted to link defendant to prior crimes that were not in evidence in closing argument and evidence of guilt was not overwhelming).

Accordingly, the trial court did not abuse its discretion in refusing to declare a mistrial on this ground.

*Judgments affirmed. Barnes, P. J., concurs. Gobeil, J., concurs in Divisions 1, 2, 3, 4, 6, 7 and 8 and in judgment only in Division 5.*